417 So.2d 1063 (1982)
The SCHOOL BOARD OF PALM BEACH COUNTY For the Use and Benefit of MAJOR ELECTRICAL SUPPLIES OF STUART, INC., Appellant,
v.
VINCENT J. FASANO, INC., a New York Corporation, and United States Fidelity & Guaranty Company, a Maryland Corporation, Appellees.
No. 81-108.
District Court of Appeal of Florida, Fourth District.
July 28, 1982.
Clarification Denied August 31, 1982.
*1064 Donald F. Wright of Wright & Fulford, Orlando, for appellant.
Larry R. Leiby of Kavanaugh & Leiby, Miami, for appellees.
ANSTEAD, Judge.
The School Board of Palm Beach County, on behalf of Major Electrical Supplies of Stuart, Inc., a supplier on a school construction project, appeals from the trial court's dismissal of Major's claim against Vincent J. Fasano, Inc., the School Board's contractor, and its surety, United States Fidelity & Guaranty Company (USF&G). At issue is whether Major has alleged sufficient compliance with certain statutory notice provisions to entitle it to recover against the contractor and surety.
A mechanics lien cannot be secured against property held by a political subdivision. § 713.01(14), Fla. Stat. (1979). However, Section 255.05(1),[1] Florida Statutes (1979), provides an alternative remedy to subcontractors and suppliers in the form of a right of action against the contractor and the contractor's performance bond. Section 255.05(2) conditions the grant of the cause of action upon compliance with the following notice provisions:
A claimant, except a laborer, who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 45 days after beginning to furnish labor, materials, or supplies for the prosecution of the work, furnish the contractor with a notice that he intends to look to the bond for protection. A claimant who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 90 days after performance of the labor or after complete delivery of the materials or supplies, deliver to the contractor and to the surety written notice of the performance of the labor or delivery of the materials or supplies and of the non-payment. No action for the labor, materials, or supplies may be instituted against the contractor or the surety unless both notices have been given. No action shall be instituted against the contractor or the surety on the bond after 1 year from the performance *1065 of the labor or completion of delivery of the materials or supplies.
In May 1978 the School Board of Palm Beach County contracted with Vincent Fasano, Inc., for the construction of the West Area Technical School in Palm Beach County. Fasano obtained a bond securing the performance of the contract with United States Fidelity & Guaranty Company (USF&G). Fasano's electrical subcontractor for the job was Carter Electric. On September 18, 1978, Major Electrical Supplies of Stuart, Inc. sent a written notice to the School Board stating that it was furnishing electrical materials to the West Area Technical Center under an agreement with Carter Electric.[2] Major sent a copy of this notice by certified mail to both Fasano and USF&G. Thereafter, Major furnished supplies to Carter from October 2, 1978, to February 22, 1980. On March 14, 1980, Major sent a letter to Fasano requesting payment of $26,866.28, the balance allegedly due to Major from Carter, and sent copies of this letter to the School Board and to USF&G. When payment was refused Major filed suit against Fasano and USF&G to recover on the USF&G bond. The trial court dismissed Major's claim with prejudice on the basis that Major failed to comply with the notice provisions of Section 255.05(2), Florida Statutes (1977).
Appellees urge us to uphold the dismissal because appellant's initial notice was defective in two respects: the notice was furnished before any materials were supplied, and the notice did not specifically inform the contractor that Major "intends to look to the bond for protection." The appellees concede that the letter sent on March 14, 1980, fulfilled the statutory requirement of a second notice of performance and non-payment.
We agree that compliance with the notice provisions constitutes a condition precedent to the action. However, as in most cases of statutory construction, our primary task is to determine the intent of the legislature and, if possible, to see that the purpose of the statute is accomplished. Gracie v. Deming, 213 So.2d 294 (Fla. 2d DCA 1968); Worden v. Hunt, 147 So.2d 548 (Fla. 2d DCA 1962).
Clearly, the major purpose of Section 255.05(1) is to protect subcontractors and suppliers by providing them with an alternative remedy to a mechanics lien on public projects.[3]City of Ft. Lauderdale v. Hardrives Co., 167 So.2d 339 (Fla. 2d DCA 1969). In addition, however, Section 255.05(2) protects the contractor and the contractor's surety from having to account to unknown suppliers and subcontractors by putting the burden on the claimants to advise the contractor and surety of their participation on the project and to advise if they are not promptly paid.
Initially, we reject the notion that the first notice was invalid because it was sent too soon. It is clear that the statute's purpose in seeing that the contractor and surety receive prompt notice of the supplier's participation in the project was accomplished even though the notice was furnished in advance of the 45 day period allowed by the statute. It would be different if the notice had been furnished after the time allowed.
A more difficult question is presented as to the effect of the absence of specific language in the notice expressing the supplier's intention to look to the bond for protection. The initial notice provided herein did specifically inform the contractor and the surety that Major was furnishing materials on the School Board's West Area Technical School project to Carter Electric, the project's electrical contractor. The notice was in writing and served upon the *1066 contractor and surety by certified mail. Signed receipts acknowledging receipt of the notice by both the contractor and surety were attached to the complaint. The copy of the notice served on the contractor also reflected that a copy was being sent to the contractor's surety, further indicating to the contractor the supplier's awareness that the surety had bonded this particular project. In essence, all of the factual information required by Section 255.05(2) was provided to the contractor and the surety. Having received the notice the contractor was then in a position to determine whether its electrical subcontractor had properly discharged its obligation to pay for the supplies furnished by Major before making payment in full to the subcontractor.
The only thing lacking in the notice was a specific statement of the supplier's intent to rely on the bond. However, where it is conceded that the only possible legal consequence of putting the contractor and surety on written notice of appellant's participation in the project was to secure appellant's rights under the provisions of Section 255.05(2), we think that an obvious implication of the notice is the expression of such an intent. We do not think the surety and the contractor were entitled to ignore this implication. We conclude that this notice, subject to any claim by the appellees that they have actually been prejudiced by the omissions alleged, constituted substantial compliance with the requirements of Section 255.05(2). In our view this result best comports with the purpose of the statute of providing an alternative remedy to subcontractors and suppliers involved on public projects, while at the same time insuring that contractors and sureties do not later have to account to unknown subcontractors and suppliers.
Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent herewith.
OWEN, WILLIAM C., Jr., (Retired) Associate Judge, concurs.
BERANEK, J., concurs in conclusion only.
NOTES
[1] Section 255.05(1) provides:

Any person entering into a formal contract with the state or any county, city, or political subdivision thereof, or other public authority, for the construction of any public building, for the prosecution and completion of any public work, or for repairs upon any public building or public work shall be required, before commencing the work, to execute a payment and performance bond with a surety insurer authorized to do business in this state as surety. Such bond shall be conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make payments to all persons who are defined in s. 713.01, whose claims derive directly or indirectly from the prosecution of the work provided for in the contract. Any claimant may apply to the governmental entity having charge of the work for copies of the contract and bond and shall thereupon be furnished with a certified copy of the contract and bond. The claimant shall have a right of action against the contractor and surety for the amount due him. Such action shall not involve the public authority in any expense. However, at the discretion of the director of the Department of General Services when such work is done for the state, or at the discretion of the official or board awarding such contract when such work is done for any county, city, political subdivision, or public authority, any person entering into such a contract which is for $25,000 or less may be exempted from executing the [payment and performance bond].
[2] The notice was actually in the form of a "Notice to Owner" which is a prerequisite under Chapter 713, Florida Statutes (1979), for securing a mechanics lien on private construction projects.
[3] On private construction projects performance bonds are usually secured for the benefit of the owner rather than subcontractors and materialmen. National Gypsum Co. v. Travelers Indemnity Co., 417 So.2d 254 (Fla. 1982).