WILLIAM J. TEMPLEMAN COMPANY, f/k/a Premier Electrical Company, Indiv. and as Assignee of Gim Electric Company, Inc., Plaintiff-Appellant, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellee (J.W. Halm Construction Company, et al., Defendants).

First District (4th Division)   No. 1—99—3043

Opinion filed September 14, 2000.—Rehearing denied November 7, 2000.—Modified opinion filed November 16, 2000.

Law Offices of Robert J. Shelist (Robert J. Shelist, of counsel), and Kelly Olson Michod & Siepker (Michael G. Swiatek, of counsel), both of Chicago, for appellant.

Riordan, Dasheill & Donnelly, Ltd., of Chicago (Cornelius F. Riordan and Peggy A. Provis, of counsel), for appellee.

JUSTICE BARTH delivered the opinion of the court:

This appeal arises out of an action by William J. Templeman Company, f/k/a Premier Electrical Construction Company (Premier), individually and as assignee of Gim Electric Co. (Gim), against United States Fidelity and Guaranty Company (USF&G) for payment under the terms and provisions of a labor and material payment bond. The bond was furnished by USF&G as surety and J.W. Halm Construction Company (Halm), as principal, to the Regional Transportation Authority (RTA), as obligee, and was related to construction of a commuter train layover facility in Joliet, Illinois. Premier sought allegedly unpaid contract balances of $18,293 due on its own subcontract with Halm, and $28,750 due on its sub-subcontract with Gim, and as assignee of Gim.

The trial court granted summary judgment to USF&G, finding that an unverified letter dated May 7, 1987, from Premier to USF&G which did not state an amount was not a notice of claim within the

meaning of section 2 of the Illinois Public Construction Bond Act (30 ILCS 550/1 *et seq.* (West 1996)) (the Act or the Bond Act).

Our task on appeal is to determine whether the notice requirements in section 2 of the Bond Act can be waived, and, if so, whether USF&G waived such requirements.

The facts revealed by the record are as follows.

On or about August 30, 1984, the RTA (predecessor of Metra), contracted with Halm to construct a commuter railroad coach layover facility known as RTA Project No. A50230 (the Project). Pursuant to the Bond Act, Halm was required to furnish a payment and performance bond to the RTA for the value of the construction contract. Separate payment and performance bonds were issued by USF&G in the total amount of $2,793,000.

On December 28, 1984, Premier entered into a subcontract with Halm in the amount of $150,000 to perform underground electrical work on the Project. Halm separately subcontracted with Gim in the amount of $575,000 to furnish and install certain electrical equipment on the Project. Gim then sub-subcontracted portions of its work to Premier.[1]

While the parties do not agree as to when, if ever, acceptance of the Project occurred, it is undisputed that all work in connection therewith was completed by the end of 1986, and the facility became operational at that time.

Subsequently, USF&G received an unverified letter dated May 7, 1987, from Premier. That letter identified the Project by number, named Halm as the general contractor, and stated that Premier had not yet been paid by Halm for work it performed on the Project. The letter also stated that Gim had not been paid for portions of its work on the Project. There was no mention of the assignment by Gim to Premier. Premier received no response.

Fifteen months later, on or shortly after September 28, 1988, USF&G received a second letter from Premier. This letter contained a demand for payment from USF&G for specific dollar amounts due and owing to Premier from Halm and to Premier from Gim, which, to Premier's knowledge, had not yet been paid in full by Halm. There was also a request for payment based on miscellaneous change work performed by Premier in connection with the Project. USF&G acknowledged receipt of the September 28 letter on September 30 and requested that Premier complete a verified proof of loss form, a blank copy of which was provided.

Premier returned the verified proof of loss form on February 25,

---

[1]Gim has assigned its claim in this cause to Premier.

1989, but omitted the date of its last payment from Halm and the date on which it last furnished material to the Project. On March 7, 1989, Edward Wright, an outside consultant hired by USF&G to handle the Premier claim, wrote a letter to Premier acknowledging receipt of the February 25 letter and requesting that the information omitted from the proof of loss form be supplied. This letter was sent to the return address listed on Premier's last correspondence. Evidently, Premier had since moved and claimed never to have received Mr. Wright's March 7 letter and request.

In late 1992, Dennis O'Brien, an attorney for Premier, contacted Mr. Wright and requested an update on the Premier claim. A meeting took place between Mr. Wright, Mr. O'Brien and Bill Templeman on November 20, 1992, to discuss the claim. Following the meeting, Mr. Wright advised Mr. Templeman of USF&G's decision to deny the claim and that the decision was final. On August 27, 1993, Premier filed this action.[2]

Premier's complaint consisted of five counts, four of which were dismissed pursuant to motion.[3] Following the dismissal of counts III and IV, the case proceeded solely on count II, Premier's bond claim against USF&G. As part of that cause of action, Premier alleged that on May 7, 1987, it "notified USF&G of non-payment of funds due from Halm Construction on its own behalf and on behalf of Gim." As part of its answer to plaintiff's complaint, USF&G asserted several affirmative defenses. The first of these alleged that Premier did not serve a notice of claim in the manner provided in section 2 of the Bond Act. The second alleged that Premier failed to file suit within six months after acceptance of the Project by the RTA.

In 1996, Premier sought summary judgment on the notice and suit limitations defenses, and this was denied by the trial court. Specifically, as to the notice defense, the trial court (Judge Durkin) found that there were questions of fact as to whether USF&G had been able to demonstrate prejudice based on Premier's allegedly defective notice.

---

[2]No proceedings have taken place against the corporate defendant Halm since it was involuntarily dissolved by the State of Illinois in 1991 and since its former president, Jack Halm, died in 1992.

[3]Counts I and V were directed against the RTA. Count I sought a common law accounting from the RTA of the funds paid to Halm under the general contract. Those counts were dismissed on September 2, 1994, and Premier's motion to reconsider the dismissal of count I was denied on May 22, 1995. Counts III and IV alleged common law and statutory bad faith against USF&G in the handling of the Premier bond claim. Those counts were dismissed on October 8, 1996.

In 1998, USF&G sought summary judgment of its own on the notice and suit limitations defenses. In support of its motion, USF&G submitted the affidavit of Donato Brescia, an engineer at the RTA, who had supervisory duties over the project. In his affidavit, Mr. Brescia stated that all work on the project was completed by the end of 1986, that all contractors had ceased work, and that the RTA had commenced operation of the layover facility.

On January 26, 1999, the trial court (now Judge Hett) granted summary judgment in favor of USF&G on its notice defense. The court explained that section 2 of the Bond Act, which gives subcontractors the right to sue thereunder, is quite specific in the requirements it lists for the contents of a notice. Since Premier's May 7, 1987, letter failed to comply with two of those requirements (verification and the recitation of an amount due and owing), Premier's notice was inadequate as a matter of law.

Premier filed a motion to reconsider, in which two arguments not previously raised were advanced. First, that the grant of summary judgment constituted an improper reconsideration of the 1996 denial (by Judge Durkin) of Premier's motion for summary judgment. And second, that the contract between Halm and USF&G stated that a direct subcontractor to the bond principal need not provide notice, and therefore USF&G waived the requirement of notice under section 2 of the Bond Act. The trial court denied the motion to reconsider on August 5, 1999, without specifically ruling on either of the new arguments.

From the trial court's order denying its motion to reconsider, Premier now appeals.

## ANALYSIS

In its motion for summary judgment, USF&G argued that Premier's May 7, 1987, letter did not constitute a notice of claim under section 2 of the Bond Act, in that it failed to state the amount allegedly due under the subcontract and was unverified. Section 2 of the Bond Act bears the heading "Right to Sue" and provides, in relevant part:

"Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond or letter of credit shall be executed as provided in this Act, shall have the right to sue on such bond ***. Provided, however, that any person having a claim for labor, and material as aforesaid shall have no such right of action unless he shall have filed a verified notice of said claim with the officer, board, bureau or department awarding the contract, within 180 days after the date of the last item of ***

materials, \*\*\* and shall have furnished a copy of such verified notice \*\*\* with the agency awarding the contract.

The claim shall be verified and shall contain (1) the name and address of the claimant \*\*\*; (2) the name of the contractor for the government; (3) the name of the person, firm or corporation by whom the claimant was employed or to whom he or it furnished materials; (4) the amount of the claim; (5) a brief description of the public improvement sufficient for identification.

No defect in the notice provided for shall deprive the claimant of his right of action under this article unless it shall affirmatively appear that such defect has prejudiced the rights of an interested party asserting the same.

Provided, further, that no action shall be brought until the expiration of 120 days after the date of the last item of work or the furnishing of the last item of materials \*\*\*; nor shall any action of any kind be brought later than 6 months after the acceptance by the State or political subdivision thereof of the building project or work." 30 ILCS 550/2 (West 1996).

Concluding that Premier's May 7, 1987, letter to USF&G failed to provide adequate notice under the Bond Act in that it was not verified and did not specify the amount claimed to be due and owing (as required by the Act), the trial court granted summary judgment in favor of USF&G.[4]

After the trial court's order granting summary judgment, Premier filed a motion for reconsideration in which it raised the contention that USF&G waived compliance with the Bond Act's notice requirements by the plain language contained in its bond. The trial court denied that motion.

■ Appellate review of an order granting summary judgment is *de novo. Kotarba v. Jamrozik*, 283 Ill. App. 3d 595, 596, 669 N.E.2d 1185 (1996). On *de novo* review, we are free to consider any pleadings, depositions, admissions, and affidavits on file at the time of the hearing regardless of whether facts contained therein were presented to the trial court in response to the motion for summary judgment. See 735

---

[4]The trial court declined to grant summary judgment on USF&G's second affirmative defense (relating to the Bond Act's six-month statute of limitations for filing suit). In so ruling, the court found that genuine fact issues existed as to whether the project was ever "accepted" in accordance with the terms of USF&G's bond and, if so, as to the date of acceptance. However, as the parties pointed out and the trial court acknowledged, the grant of summary judgment on the notice affirmative defense was sufficient to end this lawsuit since statutory notice is generally a prerequisite to maintaining a claim under the Bond Act. See, *e.g., Concrete Structures of the Midwest, Inc. v. Fireman's Insurance Co.*, 790 F.2d 41, 43 (7th Cir. 1986).

ILCS 5/2—1005 (West 1998); *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986); *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 136, 685 N.E.2d 434 (1997).

Paragraph 3 of the labor and material payment bond, signed by both parties but drafted by USF&G, contains a notice provision with respect to the filing of suits and claims. That paragraph provides, in relevant part:

"No suit or action shall be commenced hereunder by any claimant:
a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days ***."

Premier contends that, by including the above language in its bond, USF&G has waived the right to require notices of claims in compliance with the Bond Act. We agree.

■ It is well established that parties who enter into contracts may waive provisions beneficial to them (*Barker v. Leonard*, 263 Ill. App. 3d 661, 663, 635 N.E.2d 846 (1994); *Geier v. Hamer Enterprises, Inc.*, 226 Ill. App. 3d 372, 391, 589 N.E.2d 711 (1992); *Jung v. Zemel*, 189 Ill. App. 3d 191, 196, 545 N.E.2d 242 (1989)), and a contractor and its surety are free to contract for protection that exceeds the minimum statutory provisions (see generally *Aluma Systems v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 855, 564 N.E.2d 1280 (1990); *Illinois State Toll Highway Comm'n ex rel. Patten Tractor & Equipment Co. v. M.J. Boyle & Co.*, 38 Ill. App. 2d 38, 51, 186 N.E.2d 390 (1962)).

■ The notice provision of statutes governing bonds of contractors constructing public buildings and suits by materialmen in connection therewith protects the contractor and the contractor's surety from having to account to unknown suppliers and subcontractors (*United States ex rel. W.E. Foley & Bro. v. United States Fidelity & Guaranty Co.*, 113 F.2d 888 (2d Cir. 1940)), by putting the burden on claimants to advise the contractor and surety of their participation on the project and to advise if they are not promptly paid (*School Board ex rel. Major Electrical Supplies of Stuart, Inc. v. Vincent J. Fasano, Inc.*, 417 So. 2d 1063 (Fla. App. 1982)), and by giving the principal contractor the earliest possible notification that a materialman has not been paid and that the materialman may make either a future demand for payment or a future claim against the bond (*Fidelity & Deposit Co. v. Herbert H. Conway, Inc.*, 14 Wash. 2d 551, 128 P.2d 764 (1942)). Thus, the notice provision contained in the Bond Act is unquestionably of benefit to a surety. *City of DeKalb ex rel. International Pipe & Ceramics Corp. v. Sornsin*, 32 Ill. 2d 284, 289, 205 N.E.2d 254 (1965).

■ The language contained in the bond issued by USF&G specifically exempts those who have a direct contract with the principal from

giving written notice to the principal, owner or surety of their intent to make a claim. Premier had a direct contract with Halm, the principal, and thus, according to the language of the bond, was not required to give notice prior to making a claim. Gim too had a direct contract with Halm and has assigned its claim in this cause to Premier. Because of the assignment, which USF&G does not challenge, we consider Premier's status with respect to the Gim claim to be that of one in privity with the principal. See *Community Bank v. Carter*, 283 Ill. App. 3d 505, 508, 669 N.E.2d 1317 (1996) (the assignee, by acquiring the same rights as the assignor, stands in the shoes of the assignor).

As it acknowledged during oral argument, USF&G issues bonds in a number of states and, as set forth in its appellate brief and as recognized by this court, bond acts differ from state to state with respect to notice requirements prior to filing a claim; some with provisions more stringent than Illinois' Act, some less so. See generally 48 A.L.R.4th § 1(a), at 1175-76 (1986). Illinois' Bond Act requires that its provisions be incorporated into every bond issued in this state. 30 ILCS 550/1 (West 1996). We find that there is an inconsistency between our Bond Act, which requires that "[e]very person" who sues must give notice within 180 days (30 ILCS 550/2 ((West 1996)) and USF&G's bond, which provides that no notice is required by those in privity with the principal.

In effect, USF&G asks to be permitted to issue a bond that provides no notice is required prior to suit, but when a claimant relies on that language, to avoid payment by invoking the Bond Act, which contains a notice requirement. This we refuse. Instead, we construe the language contained in the bond issued and drafted by USF&G against USF&G and conclude as a matter of law that notice by Premier was waived. *Barker*, 263 Ill. App. 3d at 663.

Finally on this issue, we find that USF&G's reliance on the "mend the hold"[5] doctrine in support of its argument that Premier should not be allowed to change positions mid-litigation is disingenuous at best. USF&G contends that Premier committed a "most insidious breach" of the mend the hold doctrine, which is based on considerations of good faith and fair dealing, when it raised, in its motion to reconsider, the issue of whether USF&G's bond waived notice in compliance with the Bond Act. We find no element of unfair surprise or arbitrariness (*Larson v. Johnson*, 1 Ill. App. 2d 36, 40, 116 N.E.2d

---

[5]The phrase, "mend the hold," is a nineteenth century wrestling term meaning to get a better grip (hold) on your opponent. *Harbor Insurance Co. v. Continental Bank Corp.*, 922 F. 2d 357, 362 (7th Cir. 1990).

187 (1953)) in the fact that USF&G was ultimately called upon to abide by the very language it inserted into its bond. We therefore reverse the trial court's grant of summary judgment on this issue as to both Premier's claim on its own behalf and its claim brought as assignee of Gim.

For the reasons set forth above, the orders of the circuit court granting summary judgment to USF&G as to Premier's notice of claim on its own behalf, as well as to Premier's notice of claim on behalf of Gim, are reversed and this cause is remanded for further proceedings.

Reversed and remanded.

HOFFMAN and SOUTH, JJ. concur.