FOURTH DIVISION
December 21, 2006

1-04-3026 & 1-04-3457 (Cons.)

| | | |
|---|---|---|
| CARROLL SEATING COMPANY J.J.L. Inc., d/b/a/ American Roofing and Repair Company, LOMBARDI ELECTRIC, INC., and TEAM MECHANICAL, INC., | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| PETER B. VERDICO and JULIE VERDICO, | ) ) | |
| Defendants and Intervenors-Appellants | ) ) | |
| (P.B. Verdico, Inc., an Illinois Corporation; Travelers Casualty and Surety Company of America, a Foreign Corporation, and Berkeley School District No. 87, a body politic, | ) ) ) ) ) ) | |
| Defendants). | ) ) ) | The Honorable Clifford L. Meacham, Judge Presiding. |

<u>MODIFIED UPON REHEARING</u>

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Defendant-intervenors are the owners of a construction company, P.B. Verdico, Inc. (Verdico), that was hired by School District 87 in Berkeley, Illinois, to renovate and build additions to several school buildings. Plaintiffs Carroll Seating Company[1], J.J.L., Inc., d/b/a American Roofing and Repair Co., Lombardi

---

[1] Carroll Seating did not file a brief in this matter.

1-04-3026 & 1-04-3457 (Cons.)

Electric, Inc., and Team Mechanical, Inc., were subcontractors hired by Verdico for the project.

As required by section 1 of the Public Construction Bond Act (Bond Act) (30 ILCS 550/1 (West 2002)), Verdico posted a payment bond for the project, with Travelers Casualty and Surety Company of America (Travelers) acting as the surety for the bond. When Verdico failed to pay plaintiffs the entire amount owed to them under their respective subcontracts, they sued Verdico, Travelers, and the school district to recover on the bond.

After the circuit court had granted summary judgment to Carroll Seating, Verdico's owners intervened, claiming that they had a stake in the case because they had agreed to indemnify Travelers for any payments made under the bond. Seeking to have the circuit court reconsider and vacate its grant of summary judgment to Carroll Seating, intervenors argued that plaintiffs' claims on the bond were untimely because the six-month time limit contained in section 2 of the Bond Act (30 ILCS 550/2 (West 2002)), and not the one-year time limit contained in the bond supplied by Verdico, was applicable. The circuit court denied intervenors' motion for reconsideration. This appeal followed.

ANALYSIS

On appeal, plaintiffs first argue that intervenors lacked standing to intervene in the underlying lawsuit. In their petition to intervene, intervenors alleged that they had an

2

interest in the proceedings because they had "personally guaranteed to Travelers payment of any losses suffered by Travelers regarding the subject payment bond." Plaintiffs argue that intervenors provided no evidence of that guarantee in the record before this court.

As intervenors point out, however, plaintiffs did not contest their standing to intervene in the circuit court below. Thus, we find that plaintiffs' lack-of-standing argument is waived and express no opinion as to whether intervenors had standing to intervene. See *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508 (1988) (stating that "lack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court").

The next question on appeal is which claim-filing limitations period is applicable, the six-month time limit found in the Bond Act, or the one-year time frame contained in the bond supplied by Verdico. Prior to the passage of the Bond Act, materialmen and laborers had no right to impose a mechanic's lien on a public work. See *Fodge v. Board of Education of the Village of Oak Park, District 97*, 309 Ill. App. 109, 122, 32 N.E.2d 650, 656 (1941), citing *Gunther v. O'Brien Bros. Construction Co.*, 369 Ill. 362, 370 (1938). Additionally, in interpreting public works contracts between the state and its contractors, Illinois courts had found that those contracts did not confer upon subcontractors the status of third-party beneficiaries to those contracts or

1-04-3026 & 1-04-3457 (Cons.)

create a "common-law right of action against a surety," even where, in some cases, those contracts contained a provision stating that "the principal contractor agree[d] 'to pay the subcontractor.'" *Fodge*, 309 Ill. App. At 122, 32 N.E.2d at 656. Without the ability to place a lien on public property and with no imputed rights under the bond contract between the state and general contractor, many subcontractors were left with no legal recourse when a general contractor failed to fulfill his contractual obligation.

In 1931 the Bond Act was passed, requiring that state officials obtain a payment bond[2] from contractors who agree to

_____

[2] The practical benefits of requiring a "payment bond" have been stated as follows:

"By guaranteeing payment for labor and materials furnished the contractor under the contract, the payment bond assures the contractor's credit, and thus expedites the subcontractor's performance. It reduces to a minimum the filing of mechanic's liens and the loss of time and money necessary for enforcing them by litigation. As mechanic's liens or other liens cannot be filed against property of the United States and of most states, the payment bonds have a singular value with respect to public works contracts as they assure payment to those who might otherwise have to depend solely on the personal responsibility of the

4

perform "public work of any kind costing over $5,000."  30 ILCS 550/1 (West 2002).  The aim of the Bond Act was twofold: it protected "those who furnish[ed] labor or materials on public works" and guarded "the tax money allotted for public works." *Housing Authority v. Holtzman*, 120 Ill. App. 2d 226, 241 (1970); see also *Aluma Systems, Inc. v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 853-54 (1990) ("The purpose of sections 1 and 2 [citation] of the Bond for Public Works Act is to protect payment to contractors and materialmen for whom no right of mechanics' liens exists against a public body, and to regulate claims against public monies").

These dual aims were codified into the claim-filing procedures contained in section 2 of the Bond Act, which allows subcontractors, materialmen, or laborers employed on a public works project to sue on the payment bond, but requires any such suit to be filed within six months of the state's acceptance of the project:

> "Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political

> contractor.  Hence, the bond requirement tends to lower bids because it eliminates the tendency to add to the bid a figure to cover the credit hazard."  T. Hass, *The Corporate Surety and Public Construction Bonds*, 25 Geo. Wash. L. Rev. 206, 210 (1956-57).

subdivision *** in this Act, shall have the right to sue on such bond or letter of credit in the name of the State, or the political subdivision thereof entering into such contract, as the case may be, for his use and benefit ***. Provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract, as the case may be, liable to such subcontractor, materialman or laborer to any greater extent than it was liable under the law as it stood before the adoption of this Act.

***

Provided, further, that no action shall be brought until the expiration of 120 days after the date of the last item of work or the furnishing of the last item of materials *** nor shall any action of any kind be brought later than 6 months after the acceptance by the State or political subdivision thereof of the building project or work. Such action shall be brought only in the circuit court of this State in the judicial circuit in which the contract is to be performed." 30 ILCS 550/2 (West 2002).

Intervenors argue that the Bond Act's claim-filing provisions (*i.e.*, the six-month limitations period which begins to run after the project is accepted) are applicable to the bond

1-04-3026 & 1-04-3457 (Cons.)

provided by Verdico because (1) the plain language of the bond itself evidences an intent to incorporate the Bond Act's claim-filing provisions, and (2) even if the bond cannot be so read, the Bond Act's provisions preempt or "override[]" the bond's one-year filing period.  We disagree.

>Paragraph 11 of the bond provided by Verdico states: "No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs.  If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable."

Thus, the plain language of paragraph 11 allows subcontractors one year from the date on which the last work was done or material was furnished by anyone on the project to file suit, unless that time allowance is "void or prohibited by law."

>Paragraph 13 states:

7

"When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond."

Intervenors argue that the "void or prohibited by law" language of paragraph 11, coupled with paragraph 13's "delete" and "incorporate" mechanism in the event of conflicting provisions, evidences an intent by the parties to the bond that the Bond Act's claim-filing provisions be engrafted into the bond; this is so, according to intervenors, even though nowhere in the bond is the Bond Act mentioned or referenced.

Their argument, however, hinges on the effect the Bond Act's claim-filing provisions have on public works bonds. If those provisions are mandatory for all such bonds, then they are right because either (1) the one-year time limit contained in the bond is "void or prohibited by law" or (2) a conflict exists between the claim-filing provisions of the bond and the Bond Act, activating the delete and incorporate provision of paragraph 13. We find, however, that the Bond Act's claim-filing provisions are not mandatory for all public works bonds for two reasons.

8

1-04-3026 & 1-04-3457 (Cons.)

First, where the legislature intended to mandate the inclusion of Bond Act provisions into all public works bonds, it did so expressly. See 30 ILCS 550/1 (West 2002) (containing a mandatory insert for all public works bonds "whether such provisions are inserted in such bond or not"). The Bond Act contains no similar mandate for its claim-filing provisions.

Second, this court has consistently found that due to the Bond Act's remedial nature, parties to a public works bond "are free to contract for protection that exceeds the [Act's] minimum." *William J. Templeman Co. v. United States Fidelity & Guaranty Co.*, 317 Ill. App. 3d 764, 770 (2000) (finding that the parties to a public works bond could set the notice requirement for a claim on that bond at 90 days, instead of the 120 days required by the Bond Act, because "[i]t is well established that parties who enter into contracts may waive provisions beneficial to them" and "a contractor and its surety are free to contract for protection that exceeds the minimum statutory provisions"); *Aluma Systems*, 206 Ill. App. 3d at 855 ("Although the express provisions of the statute are deemed to be contained in every bond for a public construction project, whether actually inserted in the bond or not, the contractor and its surety are free to contract with the public entity for additional liability which exceeds the statutory provisions"); *Illinois State Toll Highway Comm'n ex rel. Patten Tractor & Equipment Co. v. M.J. Boyle & Co.*, 38 Ill. App. 2d 38, 51 (1962) ("There is nothing to prevent

9

1-04-3026 & 1-04-3457 (Cons.)

the parties from entering into a contract and bond which go far beyond the statutory provisions, where they are entered into by parties competent to contract and they are not prohibited by law").

In this case, the parties did just that; instead of allowing materialmen six months from the date that the project was accepted in which to file suit on the bond, they chose to allow them one year from the date the last work was performed by anyone on the project. These provisions do not conflict with the Bond Act's mandates in a manner like a provision that allowed materialmen only one week from the date the project was accepted to file suit would; they merely extend the Bond Act's protective, remedial reach.

We find *Templeman* to be instructive. In *Templeman*, the public works bond exempted claimants who had "a direct contract with the principal" from providing notice of a claim on the bond. *Templeman*, 317 Ill. App. 3d at 770. When one such claimant filed suit on the bond without providing notice, the bond's surety objected and argued that the claimant should have followed the notice requirement contained in section 2 of the Bond Act. *Templeman*, 317 Ill. App. 3d at 771, citing 30 ILCS 550/2 (West 1996). We rejected the surety's attempt to rely on the Bond Act's notice provisions:

> "In effect, [the surety] asks to be permitted to issue a bond that provides no notice is required prior

10

to suit, but when a claimant relies on that language, to avoid payment by invoking the Bond Act, which contains a notice requirement.  This we refuse.  Instead, we construe the language contained in the bond issued and drafted by [the surety] against [the surety] and conclude as a matter of law that notice by [the claimant] was waived."  *Templeman*, 317 Ill. App. 3d at 771.

Just as in *Templeman*, the parties in this case utilized a bond that provided materialmen one year from the last date anyone on the project finished their work.  Because the Bond Act's claim-filing provisions are not mandatory for all public works bonds, but merely a minimum below which parties may not go (see *Templeman*, 317 Ill. App. 3d at 770; *Aluma Systems*, 206 Ill. App. 3d at 855; *Illinois State Toll Highway Comm'n*, 38 Ill. App. 2d at 51), the bond's claim-filing provisions are both valid and applicable.

The final issue before us is whether the circuit court properly found that no genuine issue exists as to whether plaintiffs' lawsuits to recover on the bond were timely.  The question, under paragraph 11 of the bond, is whether these lawsuits were filed "one year from the date *** on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract."

11

1-04-3026 & 1-04-3457 (Cons.)

Plaintiffs filed suit on the following dates:

Team Mechanical on July 8, 2003;

Carroll Seating on August 28, 2003;

American Roofing on September 9, 2003; and

Lombardi Electric on January 13, 2004.

In its motion for summary judgment, Carroll Seating provided an affidavit indicating that it had performed work on the project on April 4, 2003, when it replaced a drawer that had been damaged.

Intervenors do not dispute that Carroll Seating replaced this drawer on that date. Instead, they argue that this date should not qualify as the starting point for the one-year claim limitations period contained in paragraph 11 of the bond because the work performed by Carroll Seating on that day was not "substantive" work but, rather, merely repair or replacement work.

In their petition for rehearing, intervenors repeat their argument on appeal that this distinction is significant in that the bond form used in the present case, the AIA A312, uses language that is virtually identical to the language found in both the federal Miller Act (40 U.S.C. § 270 et seq.) and the Illinois Bond Act.

The relevant language of the bond provides that a claimant must bring suit before the "expiration of one year from the date *** on which last labor or service was performed by anyone under the Construction Contract."

12

1-04-3026 & 1-04-3457 (Cons.)

The federal Miller Act provides that suit must be brought by a claimant no later than "after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him." 40 U.S.C. § 270b(b).

The Illinois Bond Act requires that a claimant furnish notice within "180 days after the date of the last work or the furnishing of the last item of materials." 30 ILCS 550/2 (2002).

In MO Construction Co. v. Intercargo Insurance Co., 318 Ill. App. 3d 673 (2000), this court held:

"Because of the absence of Illinois authority and the similarity of the purposes of the Bond Act, the Miller Act and the Mechanics Lien Act, we believe that the term 'last work,' as used in the Bond Act, should be interpreted in a manner similar to the nearly identical terms in the Miller Act and the Mechanics Lien Act.  Under those Acts, *** corrective or repair work is not considered in determining the date that a contractor supplied its 'last work' on a project for purposes of calculating the limitations period for claims relating to that work.  We find that the legislature's use of a similar term in the Bond Act suggests that the legislature also intended to exclude corrective or repair work when determining the date of 'last work' under the Bond Act."  MO

13

1-04-3026 & 1-04-3457 (Cons.)

Construction Co. v. Intercargo Insurance Co., 318

Ill. App. 3d at 684.

We agree with intervenors that it is important that language in published bond forms be interpreted in the same manner as similar language contained in public statutes. However, this interpretation does not aid intervenors' position. The intervenors strenuously argue that Carroll Seating's replacement of a drawer on April 4, 2003, was repair work, not substantive work. It would appear that the trial court found otherwise, considering the court's order denying intervenors' motion for reconsideration explicitly stated: "The Court specifically finds that 'work' as used in the phrase 'last day of work' means substantive work, as opposed to warranty or remediation work."

In addition to Carroll Seating's affidavit, the legal significance of which intervenors question, Team Mechanical's project manager, Wayne Orlowski, also provided an affidavit to the court on May 18, 2004. In that affidavit, Mr. Orlowski averred that Team Mechanical performed "balancing work" on the school building's heating and air conditioning system in February 2003. He further averred that this was not repair work, was not on the punchlist, had not been previously performed and was not related to Team Mechanical's warranty. Team Mechanical submitted its final pay application number in May 2003.

Taking Orlowski's uncontradicted affidavit as providing the "date on which the last labor or services was performed by anyone

14

1-04-3026 & 1-04-3457 (Cons.)

*** under the Construction Contract," all of the subcontractors' suits were filed within the one-year period provided under paragraph 11 of the bond.

Affirmed.

CAMPBELL and GREIMAN, JJ., concur.