646 So.2d 268 (1994)
MARTIN PAVING COMPANY, Appellant,
v.
UNITED PACIFIC INSURANCE COMPANY, etc., Appellees.
No. 94-203.
District Court of Appeal of Florida, Fifth District.
December 2, 1994.
Leslie King O'Neal, of Holland & Knight, Orlando, for appellant.
Clifford B. Shepard, III, and T. Grey Squires, of Killgore, Pearlman, Shepard & Stamp, P.A., Orlando, for appellees.
GRIFFIN, Judge.
This is an appeal of a summary final judgment entered in favor of United Pacific Insurance Company ("United"), as surety, on a public construction payment bond. We reverse.
*269 Appellant Martin Paving Company ("Martin"), a sub-subcontractor, supplied asphalt to D & M Paving Company ("D & M") from October 31, 1992 to November 23, 1992, in connection with a paving project at the intersection of U.S. 17-92 and Taylor Road in Volusia County, Florida. D & M was a subcontractor on the project for the general contractor, American Lighting & Signalization, Inc. ("American"). The work was commissioned by the State of Florida, Department of Transportation ("DOT"). United is the surety under a payment bond provided by American, the general contractor, in connection with the project. The bond, which guaranteed obligations totalling $237,320.80, provided in pertinent part:
NOW, THEREFORE, The condition of this obligation is such that if the above-bounden Principal [American] in all respects shall, comply with Section 255.05 and 337.13, Florida Statutes, and the terms and conditions of said Contract, and his obligations thereunder, including the proposal, project specifications, and plans for State Project, Job. No. 99005-3520 therein referred to and made a part thereof, and such alterations as may be made in said plans and specifications, as therein provided for; and, further, if such Contractor shall promptly make payment to all persons supplying labor, materials, equipment and supplies, used directly or indirectly by the Contractor or any Subcontractor(s) in the prosecution of the work provided in said Contract, and promptly shall pay all State Workmen's Compensation and Unemployment Compensation taxes incurred in the performance of the said Contract, and shall pay to the Department double any amount in money or property the Department may lose or be overcharged or otherwise defrauded of, by reason of any wrongful or criminal act of the Contractor, its agents or employees, then this obligation to be void; otherwise, to be and remain in full force and virtue in law.
Martin brought an action based on the bond against United in August 1993 to recover $18,719.22 it was allegedly owed under its agreement with D & M. Martin's one-count complaint did not reference section 255.05; rather, it alleged that the bond was a common law surety bond which had been breached by United. United's answer alleged that the bond was a statutory public construction bond and that Martin was precluded from recovering under the bond because it had failed to comply with the notice provisions of section 255.05(2). United also moved for summary judgment on this same basis.
In the course of the litigation, Martin established by affidavit that it had hired an agent, Construction Advocates, to handle compliance with the requirements of 255.05. Construction Advocates sent a Demand for Copy of Payment Bond to the DOT on November 9, 1992 requesting a copy of any payment or performance bonds that existed on the paving project.[1] DOT never responded. DOT was then contacted by telephone but represented that there was no bond on the project. Martin also searched the public records of Volusia County but no copy of the bond had been filed. Section 255.05(1), Florida Statutes, requires such filing of the bond if one exists on a project of this size. Martin did not learn that there was a bond until March 1993. Martin then immediately sent a notice of nonpayment to United, requesting payment on the bond.
Both below and on appeal, United principally contends that the 1980 amendment to section 255.05, which added subsection (4)[2] to the current statute, eliminated common law bonds, thus, as a matter of law, Martin's *270 claim, which asserts a right to recover on a "common law" bond, cannot succeed. Secondarily, United contends that Martin is bound to comply with the notice requirements of subsection (2), even if DOT fails in its statutory obligation under section 255.05(1) to supply a certified copy of the bond on request, even if the principal fails in its statutory obligation under section 255.05(1) to record the bond, and even if the surety fails in its statutory obligation under section 255.05(1) to include essential information on the face of the bond, including the name and address of both the principal and the surety, and a description of the project.[3] We begin by rejecting United's principal contention that enactment of subsection (4) of 255.05 made a "dinosaur" of the concept of a common law bond and that, in light of the enactment of subsection (4), all "bonds obtained for public works projects" are statutory bonds regardless of form. United grounds its argument on the language in subparagraph (4) and on the fact that there have been no reported appellate decisions in Florida identifying a common law bond on a public project[4] since the enactment of subparagraph (4). As to the latter assertion, we can draw no such inference. To the contrary, it may well be that the 1980 amendments (specially when augmented by the 1988 amendment to 255.05)[5] have largely eliminated the need for the common law bond argument. See United Bonding Ins. Co. v. City of Holly Hill, 249 So.2d 720 (Fla. 1st DCA 1971).
Subparagraph (4) of section 255.05 is more narrow than United's reading of it. It does clearly communicate that, regardless of the form of the bond, the underlying payment provisions of all bonds furnished for public works projects described in subsection (1) of 255.05 will be construed and deemed statutory bond provisions. Nothing in this language can support the conclusion that common law bonds have ceased to exist in Florida, however. The term "common law bond" still means, as it always has meant, a bond whose protections exceed the minimum obligations imposed by statute. State, Dep't of Transp. v. Houdaille, 372 So.2d 1177, 1178 (Fla. 1st DCA 1979); see also Southwest Fla. Water Management Dist. v. Miller Constr. Co., 355 So.2d 1258, 1260 (Fla. 2d DCA 1978). The bond in this case is a "common law bond." Such a bond still may be subject to the notice and statute of limitations applicable to a statutory bond, however, because the statute provides that the payment provisions of any bond "furnished for public works contracts described in subsection (1)" of 255.05 (whether a "statutory" bond, due to the limited scope of its coverage, or a common law bond, due to broader coverage) is subject to the notice requirements and the time limitations in subparagraph (2).
Evidently, at one point the 1980 Florida legislature had considered the idea of making the form contained in subsection (3) of 255.05 a mandatory form to be used in all public works projects. Staff of Fla.H.Comm. on Governmental Operations, CS/HB 445, Committee Report (April 24, 1980). The idea was *271 to standardize, limit and make more certain the scope of coverage under these bonds, thereby reducing premiums and ultimately creating savings for the state. This idea was met by objections from state agencies, who preferred to utilize their own forms and to fashion their own scope of coverage. Some insurers also preferred the form not be statutorily mandated in order to have some control over the form of the bond they issue. Staff of Fla.S.Comm. on Government Operations, SB 33, Staff Analysis (January 1980).
Although the mandatory form idea was dropped, the legislature decided to tackle the complaint voiced by sureties that the common law bond argument frequently left them without the benefits of subsection (2) and that, under the payment bond provisions of public works bonds they issued, they were sometimes unfairly saddled with payment long after their principal had received final payment and had disappeared. Staff of Fla. S.Comm. on Government Operations, SB 33, Staff Analysis (January 1980). The response of the legislature was to add subsection (4), imposing subsection (2) limitations on all bonds. Concomitantly, the surety was required by subsection (6), to assure that the bond expressly referred to section 255.05 and contain a notice that claims were subject to the 255.05(2) deadlines. Then, in 1988, in an apparent effort to create a means to assure the existence and terms of the bond in the public contract context could be readily and dependably ascertained, the legislature amended subsection (1). The amendment added the requirements that the bond be filed in the public records of the county where the improvement is located and that it contain certain information making it easier to identify the principal, the surety and the project. Inexplicably, however, when the legislature added these requirements, it failed to amend its own sample of the bond form contained in 255.05(3). Thus, the bond form authorized in subparagraph (3) of 255.05 violates the express requirements of subsection (1) and (6).
Appellee urges that it cannot be faulted for issuing a bond that does not comply with 255.05(1) and (6) because it used the form DOT requires. A clue to the reason for the failure of the DOT bond to conform to the 1980 and 1988 amendments to 255.05 may be found in the fact that DOT's bond expressly covers the principal's compliance with section 337.13, Florida Statutes  a statute repealed in 1976. Ch. 76-85, § 2 at 156, Laws of Fla. DOT evidently has not done any work on this form in a while. Nevertheless, the form DOT chooses to use and the procedures DOT chooses to follow are not controlling on the question of United's and Martin's rights and obligations under Florida statutes. Even if DOT were to refuse to accept a bond written in compliance with section 255.05, the surety has the option of refusing to write a nonconforming bond.
The statutory scheme that has developed through these various amendments to section 255.05 requires the bond to be properly recorded and to contain the information identified in subsection (1). Subparagraph (4), in turn, expressly is limited to "bonds furnished for public works projects described in subsection (1)." Although the syntax of the key sentence in subsection (4) is poor, the statutory scheme is clear. We hold that unless subsection (1) is complied with, subsection (4) does not operate to require the claimant's compliance with subsection (2).
The same result is reached by application of common sense. Here Martin claims to have followed the statutory path to discover the bond in order to comply with the requirements for perfecting a claim. Because of the failure of others, Martin did not find the bond in time to timely assert its claim. The current statutory scheme plainly does not contemplate that the principal and surety can defeat a payment bond claim by avoiding detection. Cf. Suchman v. National Hauling, Inc., 549 So.2d 200 (Fla. 3d DCA 1989). The amended statutory procedure is simple enough for the surety and principal to follow in order to insure the coveted protections of subsection (2) of 255.05. If they cannot follow the procedure, they cannot expect the claimant to do so either. In such a case, the claim is governed by the terms of the bond.
*272 The summary judgment in favor of United is reversed.
REVERSED and REMANDED.
COBB and PETERSON, JJ., concur.
NOTES
[1] The form notice sent by Construction Advocates incorrectly referenced the chapter 713 obligation of the owner to transmit bonds in a mechanic's lien context, but DOT's duty to respond and supply the bond did not depend on a correct statutory reference.
[2] Chapter 80-32, Laws of Fla., added the following:

(4) The payment provisions of all bonds furnished for public work contracts described in section (1) shall, regardless of form, be construed and deemed statutory bond provisions, subject to all requirements of subsection (2).
Notably, at the time subsection (4) was added, subsection (6) was also added:
(6) All bonds executed pursuant to this section shall make reference to this section number and shall contain reference to the notice and time limitation provisions of this section.
[3] The bond also lacked the required express reference to the notice and time limitations of 255.05(2). Section 255.05(6), Fla. Stat. (1993). That omission is not material under the facts of this case, however, and we do not address the legal effect of it.
[4] One decision, Tremack Co. v. Homestead Paving Co., 582 So.2d 26 (Fla. 3d DCA 1991), is probably a case involving a common law bond issued on a public project but because the contestants were a subcontractor and a sub-subcontractor, it is impossible to tell from the way the opinion is drafted. Footnote 1 is suggestive, however.
[5] Chapter 88-397, Laws of Fla., amended subsection (1) as follows:

255.05 Bond of contractor constructing public buildings; form; action by materialmen. 
(1)(a) Any person entering into a formal contract with the state or any county, city, or political subdivision thereof, or other public authority, for the construction of a public building, for the prosecution and completion of a public work, or for repairs upon a public building or public work shall be required, before commencing the work, to execute, deliver to the public owner, and record in the public records of the county where the improvement is located, a payment and performance bond with a surety insurer authorized to do business in this state as a surety. The bond must state the name and principal business address of both the principal and the surety and must contain a description of the project sufficient to identify it.