908 So.2d 360 (2005)
AMERICAN HOME ASSURANCE COMPANY, Petitioner,
v.
PLAZA MATERIALS CORPORATION, Respondent.
No. SC02-1257.
Supreme Court of Florida.
July 7, 2005.
*361 Robert E. Morris of The Morris Law Firm, Tampa, FL and Hala A. Sandridge of Fowler, White, Boggs and Banker, P.A., Tampa, FL, for Petitioner.
Jamie Billotte Moses of Fisher, Rushmer, Werrenrath, Dickson, Talley and Dunlap, P.A., Orlando, FL, for Respondent.
Brett D. Divers and E.A. "Seth" Mills, Jr. of Mills, Paskert, and Divers, P.A., Tampa, FL, on behalf of The Surety Association of America as Amicus Curiae.
Dana G. Toole of Dunlap and Toole, P.A., Tallahassee, FL, on behalf of The Florida Transportation Builders Association and APAC-Florida, Inc. as Amici Curiae.
Pamela S. Leslie, General Counsel and Marianne A. Trussell, Deputy General Counsel, Tallahassee, FL, on behalf of Department of Transportation as Amicus Curiae.
PER CURIAM.
We have for review a decision of a district court of appeal on the following question, which the court certified to be of great public importance:
IF A STATUTORY PAYMENT BOND DOES NOT CONTAIN REFERENCE TO THE NOTICE AND TIME LIMITATION PROVISIONS OF SECTION 255.05(6), ARE THOSE NOTICE AND TIME LIMITATIONS NEVERTHELESS ENFORCEABLE BY THE *362 SURETY, OR IS THE CLAIMANT ENTITLED TO RELY UPON THE NOTICE AND TIME LIMITATIONS APPLICABLE UNDER THE COMMON LAW?
Am. Home Assurance Co. v. Plaza Materials Corp., 826 So.2d 358, 361 (Fla. 2d DCA 2002). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

Facts and Procedural History
As outlined by the Second District in its opinion below, the following facts are pertinent for our consideration of the present action:
This case arises out of the public construction of the Polk Parkway by the DOT. The Polk Parkway was built in sections, and each section apparently had its own contract documents. This case concerns the bonds issued for sections 3A, 3B, and 6A. For all relevant sections of the Polk Parkway, the DOT was the owner, who contracted with Cone Constructors, Inc. ("Cone"), as the general contractor. Cone subcontracted certain work to Fulton Construction ("Fulton"), and Fulton obtained materials from Plaza. The DOT paid Cone for certain work. Allegedly, Cone paid Fulton in full and received a general release in favor of itself and American Home, as surety. However, Fulton did not pay Plaza. Thereafter, both Fulton and Cone filed for bankruptcy protection. As a result, Plaza sought payment from the bond[s]. Plaza, however, did not comply with all of the notice and time requirements contained in section 255.05(2) when perfecting these claims.
American Home, 826 So.2d at 359.
The trial court permitted Plaza to enforce its claims upon the bonds, despite the company's lack of compliance with the notice requirements of section 255.05(2). See id. at 358. The court held "that the bonds in this case were common law bonds rather than statutory bonds and that therefore American Home could not enforce the restrictions contained in section 255.05(2)." Id. at 360. On appeal, the Second District affirmed, stating:
There can be no dispute that the DOT bond does not "contain reference to the notice and time limitation provisions of [section 255.05]." This is a mandatory requirement of subsection (6).
Section 255.05(4) requires that the "payment provisions" be deemed statutory and subject to all the requirements of subsection (2). Even if this statutory language subjects the additional, broader coverage of a common law bond to the requirements of subsection (2), as was suggested by the Fifth District in Martin Paving [v. United Pacific Insurance Co., 646 So.2d 268, 270 (Fla. 5th DCA 1994)], this language does not permit American Home to issue a bond in violation of subsection (6). If anything, the justification for "deeming" a bond subject to the subsection (2) requirements rests in the fact that the bond informs the claimant of these requirements. Accordingly, we conclude that a surety that issues a bond that does not contain notice of the restrictions as required by subsection (6) is simply not entitled to enforce those restrictions. To this extent, the violation of subsection (6) transforms the statutory bond into a common law bond, or at least renders the time restrictions in subsection (2) unenforceable.
We recognize that our opinion does not require Plaza to prove that it was misled or confused by the failure of American Home to comply with subsection (6) in order to receive a longer claims period. We conclude that the legislature added the notice requirement in subsection (6) to eliminate the cost *363 and necessity of litigating complex issues of waiver or estoppel. American Home had the opportunity to demand that DOT utilize a bond form that complied with subsection (6). It chose not to do so. Under these circumstances, we conclude that the better rule is to permit the longer claims period without requiring claimants to prove that they were misled by the statutory violation.
Id. at 360-61 (footnote omitted).
Based upon its conclusion that "[t]he DOT standard contract bond form is the subject of ongoing litigation throughout the state [and t]rial courts have reached various outcomes concerning the issues addressed in this opinion," id. at 361, the district court certified the above-quoted question to this Court as a matter of great public importance, and this action followed.[1] Unfortunately, we must resolve application of statutory provisions that are conflicting. We attempt to respect the provisions by affording each provision a field of operation rather than elevating any provision over another.

Analysis
The section 255.05 legislative scheme is designed to afford protection for those providing work and materials on public projects, because these persons and entities cannot perfect a mechanics' lien on public property. See Coastal Caisson Drill Co. v. Am. Cas. Co. of Reading, Pa., 523 So.2d 791, 793 (Fla. 2d DCA 1988), approved, 542 So.2d 957 (Fla.1989); William H. Gulsby, Inc. v. Miller Const. Inc., of Leesburg, 351 So.2d 396, 397 (Fla. 2d DCA 1977). Additionally, however, the statute at issue was also designed to afford protection to both the surety on the project and the public. The bond itself protects the public, as "owner" of the project, from "two particular defaults by a builder. The payment portion of the bond contains the insurer's undertaking to guarantee that all subcontractors and materialmen will be paid and the performance part of the bond guarantees that the contract ... will be fully performed." Coastal Caisson, 523 So.2d at 793. Finally, section 255.05(2) affords protection to contractors and the contractors' sureties from being compelled to account to unknown suppliers and subcontractors by placing a burden on claimants to advise the contractor and surety of their participation on the project and to advise if they are not promptly paid. See Sch. Bd. of Palm Beach County v. Vincent J. Fasano, Inc., 417 So.2d 1063, 1065 (Fla. 4th DCA 1982).
In accordance with the intent to protect various interests, including subcontractors, contractors, sureties, and the public, the straightforward language of the statute attempts to create a clear and simple method of bonding payment for, and performance of, public construction projects. Section 255.05(1) mandates the delivery and filing of a bond which guarantees the payment of subcontractors and performance of the underlying contract with the governmental unit prior to commencement of any public works project. Additionally, this subsection details the minimum required information to be contained on the face of the bond.[2] While subsection (1) *364 operates to guarantee payment to subcontractors, subsection (2) provides certain "condition[s] precedent to maintenance of an action" for payment under a bond delivered and filed pursuant to section 255.05(1). W.G. Mills, Inc. v. M & MA Corp., 465 So.2d 1388, 1390 (Fla. 2d DCA 1985); see also Fasano, 417 So.2d at 1065. Specifically, a subcontractor claimant must notify the contractor within forty-five days of commencement of work or delivery of materials of its intent to look to the bond for protection, and must also notify the contractor within ninety days of completion of the work of any nonpayment and an intent to make a claim upon the bond.[3] Indeed, the statute specifically provides that "[n]o action ... may be instituted against the contractor or the surety unless both notices have been given." § 255.05(2), Fla. Stat. (1995). Finally, subsection (2) provides that "[n]o action shall be instituted against the contractor or the surety on the payment bond ... after 1 year from the performance of labor." § 255.05(2), Fla. Stat. (1995).
In 1980, the Legislature added subsections (4) and (6) to section 255.05. Subsection (4) specifically mandates that "[t]he payment provisions of all bonds furnished for public work contracts described in subsection (1) shall, regardless of form, be construed and deemed statutory bond provisions, subject to all requirements of subsection (2)." § 255.05(4), Fla. Stat. (1995) (emphasis supplied). Subsection (6), on the other hand, specifically requires that all bonds executed under section 255.05 contain explicit reference to section 255.05 and the notice and time limitations of subsection (2).[4] It is the intersection of these *365 two subsections which provides the subject of the instant action.[5]
Under the facts of the instant case, unavoidable internal conflict between subsections (4) and (6) of section 255.05 exists. Plaza, seeking protection under the payment portion of the bonds in question, failed to comply with the notice and time requirements contained in section 255.05(2) when perfecting its claims. See American Home, 826 So.2d at 359. In accordance with subsection (4), the payment provisions of American Home's bonds should be construed as statutory and, therefore, Plaza's failure to comply with 255.05(2) would preclude its claims upon the bonds. See Harvesters Group, Inc. v. Westinghouse Elec. Corp., 527 So.2d 257, 258 (Fla. 3d DCA 1988).
Simultaneously with Plaza's failure to comply with the presuit notice requirements of section 255.05(2), however, American Home's bond failed to comply with the clear and unambiguous requirement of subsection (6) that the bond "make reference to this section [255.05] by number and ... contain reference to the notice and time limitation provisions of this section." § 255.05(6), Fla. Stat. (1995). Thus, this Court must address a situation in which the conduct of the parties forces resolution of a legislative inconsistency in operation, to determine which noncomplying party should prevail. In essence, the text of the statute before us on these facts mandates either that neither or that both parties before us should prevail. American Home should prevail because subsection (4) acts to label its bond a "statutory bond" subject to the time and notice provisions of section 255.05(2). However, American Home's bond also failed to comply with the requirements of subsection (6). Thus, according to Plaza, the bond does not warrant "statutory" treatment under section 255.05. Likewise, subsection (6) mandates that those seeking protection under public works bonds such as Plaza receive actual notice on the face of the bond of the conditions precedent to filing a claim upon the bond, but a separate subsection (4) specifically states that claims upon these bonds are subject to the strictures of section 255.05(2) "regardless of [the] form" of the bond. Such a scenario was confronted by this Court in Alexdex Corp. v. Nachon Enters. Inc., 641 So.2d 858 (Fla.1994): "We now have two statutes that when considered separately are clear, precise, and their meanings understandable; yet when taken together they are inconsistent." Id. at 861.
The parties to the instant action urge this Court to select one of the two subsections *366 at issue here as the primary or more important provision which "trumps" the other. According to the petitioner, we should read the "regardless of form" language contained within subsection (4) to mean that compliance with the dictates of subsection (6) is completely irrelevant to enforcement of the notice and time provisions of section 255.05(2). American Home would have us conclude that as long as a bond is filed pursuant to section 255.05(1) to guarantee payment for services or materials delivered to a public works project, it should be deemed a statutory bond, and the mandate of subsection (6) is merely advisory or nothing more than a recommendation. Likewise, the respondent urges this Court to conclude that the specific, mandatory language of subsection (4) has absolutely no bearing if the information outlined in subsection (6) is not included on the face of the bond. According to Plaza, the Legislature only intended subsection (4) to have any consequence when complete compliance with subsection (6) was accomplished. We cannot agree with either absolute position because such would, in essence, render a subsection of the statute meaningless.
This Court cannot engage in a narrow, limited reading of an individual subsection of section 255.05 as the dissent urges, which would render another coequal provision of the statute entirely nugatory. We have stated "[i]t is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." Hechtman v. Nations Title Ins., 840 So.2d 993, 996 (Fla.2003). Further, "a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless." State v. Goode, 830 So.2d 817, 824 (Fla.2002). Therefore, it is our duty to read the provisions of a statute as consistent with one another, see State v. Putnam County Development Authority, 249 So.2d 6, 10 (Fla.1971), and to give effect and meaning to the entirety of the legislative enactment at issue. See, e.g., Unruh v. State, 669 So.2d 242, 245 (Fla. 1996). In light of these fundamental principles, we decline to render either subsection (4) or (6) completely without operation by selecting either one for singular primacy in the instant case. To do so, as the dissent argues we should, would be to disregard basic tenets of statutory construction that are elements of mainstream Florida law.
While the instant case presents an issue of first impression for this Court, two of the district courts of appeal have previously addressed the factual scenario presented here. As previously related, the district court below determined that "a surety that issues a bond that does not contain notice of the restrictions as required by subsection (6) is simply not entitled to enforce those restrictions." American Home, 826 So.2d at 361. Due to the failure of the bonds to comply with subsection (6), the bonds in question were deemed common law bonds, and the court concluded that the language of subsection (4) "does not permit American Home to issue a bond in violation of subsection (6)." Id.; see also Martin Paving Co. v. United Pacific Ins. Co., 646 So.2d 268, 271 (Fla. 5th DCA 1994) (concluding that "unless subsection (1) is complied with, subsection (4) does not operate to require the claimant's compliance with subsection (2)"). Clearly, the court below concluded that the petitioner's noncompliance with subsection (6) trumped any effect of section 255.05(4) and mandated that the payment provisions of the bonds in question be treated as common *367 law bonds.[6] This is one possible result; however, it is impermissible because it entirely negates subsection (4). Indeed, the American Home and Martin Paving decisions completely write subsection (4) out of existence, an action which we cannot approve. Further, we note that no Florida court has ever adopted the position advanced by the dissent, which would completely eliminate subsection (6).
Ironically, the Fifth District Court of Appeal addressed a claim involving "the same surety and the same `Polk County Parkway'" project, and arrived at a different result in Florida Crushed Stone Co. v. American Home Assurance Co., 815 So.2d 715 (Fla. 5th DCA 2002). In its decision, the Fifth District concluded:
[A]s we read section 255.05(4), perhaps the most unambiguous portion of the statute, Florida no longer recognizes a common law payment bond given on a public works project. The payment provisions of all bonds given on a public works project regardless of form, the legislature tells us, shall be construed as statutory bond provisions subject to the requirements of section 255.05(2). We believe that fashioning a remedy which incorporates a "common law payment bond" on this public works project which is not subject to the requirements of subsection (2) is contrary to the express language of the statute. Instead of holding that the bond's non-compliance with the statutory requirements automatically excuses claimants from complying with the provisions of subsection (2), we should recognize that the bond does incorporate these requirements but that a bonding company which has issued a bond which fails to incorporate all statutorily required information may be estopped from asserting the claimant's non-compliance with the provisions of subsection (2) if such non-compliance has resulted from the failure of the bond to contain the information required by the statute.

Id. at 716 (footnotes omitted). In essence, the Fifth District determined that the payment provisions of bonds delivered pursuant to section 255.05(1) are to be construed as statutory, but if a claimant's noncompliance with the notice requirements of section 255.05(2) resulted from the bond's failure to relate the information required by section 255.05(6) concerning statutory notice, the claim could proceed. Recovery against the bond will be precluded only in those cases in which the claimant's failure to comply with the requirements of subsection (2) did not result from the bond's deficiencies under subsection (6). See id. at 716-17.
We are persuaded that the only method of giving any simultaneous meaning to both subsections (4) and (6) in the scenario before us is adoption of the approach enunciated by the Fifth District in Florida Crushed Stone as explained and expanded upon in this opinion. We cannot agree with the assertions of the parties before us or the dissent, each of which advocate completely ignoring the entirety of either subsection (4) or subsection (6). Indeed, a decision which results in one of these two subsections "trumping" the other would run entirely counter to this Court's well-settled principles of statutory construction. As mentioned earlier, and as we stated in Unruh v. State, 669 So.2d 242 (Fla.1996):
As a fundamental rule of statutory interpretation, courts should avoid readings that would render part of a statute *368 meaningless. Furthermore, whenever possible courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another. This follows the general rule that the legislature does not intend to enact purposeless and therefore useless legislation.
Id. at 245 (citations and quotation marks omitted); see also State v. Putnam County Dev. Auth., 249 So.2d 6, 10 (Fla.1971). It is this Court's "duty to read the several provisions of [section 255.05] as consistent with one another," id.; therefore, we must make every attempt to give effect and meaning to all of the provisions of section 255.05, and compliance or non-compliance must have some consequence.
Our refusal to read either subsection (4) or (6) to the exclusion of the other is supported by the legislative history of the enactment  an important source of the legislative intent in a case, such as this, where the plain text of the statute is in inescapable conflict. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). Importantly, the Legislature added subsections (4) and (6) to the statute, pursuant to the same bill, in 1980. See Ch. 80-32, § 1, Laws of Fla. It would defy logic to conclude that the Legislature intended two contemporaneous amendments to negate one another.
Moreover, the history of the 1980 amendment reveals that the Legislature may have initially intended to avoid the factual scenario presented here by mandating the statutory bond form. Fla. S. Comm. on Govtl. Ops., SB 33 (1980) Staff Analysis 1 (Jan. 16, 1980) (on file at Fla. State Archives). The drafters believed that a mandatory form would provide uniformity and prevent courts from deeming bonds common law bonds. Id. However, surety companies did not want the Legislature to mandate a particular bond form, expressed a preference for using their own forms, and found it a more "desirable solution" for the Legislature to include a statutory requirement that any bond include a reference to section 255.05 and to the statutory time limits. Id. at 2. Before the bill was passed, the legislative intent shifted. The record of the change reads as follows:
The bond form in the statute would continue to be permissive, not mandatory.
Bonds executed pursuant to the section shall be construed as statutory bonds, regardless of form.

The bill requires bonds for public works to refer to the statute and to the time and notice limitations of the statute.
Fla. S. Comm. on Govtl. Ops., SB 33 (1980) Statement of Substantial Changes Contained in Committee Substitute for Senate Bill 33 (on file at Fla. State Archives) (emphasis added).
This legislative intent is evidenced by the language in subsection (4), which provides that regardless of form, the bonds described in subsection (1) shall be deemed statutory bonds and subject to all of the notice and time requirements of subsection (2). The intent is also expressed in subsection (6), which provides that "[a]ll bonds executed pursuant to [section 255.05] shall make reference to this section by number and shall contain reference to the notice and time limitation provisions of this section." § 255.05(6), Fla. Stat. (1995) (emphasis added). On this basis, it is clear that the Legislature did not intend for either subsection (4) or (6) to have a completely preclusive effect as the parties and the dissent assert in this dispute.
While the dissent criticizes consideration of the legislative staff analysis contending that such analyses "add nothing to an investigation of legislative intent," dissenting op. at 376, the dissent fails to direct our attention to a single majority *369 opinion from a Florida court that directly supports this position. The only Florida opinion cited by the dissent that disapproves of the use of legislative history is a dissenting opinion, which of course is not binding precedent.[7] In fact, since 1982 this Court has on numerous occasions looked to legislative history and staff analysis to discern legislative intent. See, e.g., Knight v. State, 808 So.2d 210, 213 n. 4 (Fla.2002) (noting that while the relevant portion of the Prisoner Releasee Reoffender Act does not expressly articulate that the term "felony punishable by life" includes both life felonies and first-degree felonies punishable by life, "the legislative history contained in the bill's Staff Analysis indicates that the Legislature intended to include both life felonies and first-degree felonies punishable by life in that term"); Olive v. Maas, 811 So.2d 644, 654 (Fla.2002) (finding that "although section 27.711 indicates that the fee schedule set forth in subsection (3) is the `exclusive means of compensation,' the legislative history and staff analysis clearly contemplate, and indeed accommodate, fees in excess of the statutory schedule in cases where unusual or extraordinary circumstances exist"); Ivey v. Chicago Ins. Co., 410 So.2d 494, 497 (Fla.1982) (relying on legislative staff analysis and economic statement in reaching the conclusion that a vehicle owner's uninsured motorist coverage was applicable to the petitioner; further noting that "[a]n act's legislative history is an invaluable tool in construing the provisions thereof" (emphasis added)). Thus, the opinions cited by the dissent clearly do not reflect Florida law. Further, the dissent's position with regard to the use of legislative history and staff analysis is beyond the mainstream of Florida jurisprudence and totally contrary to well-established Florida precedent.
In light of the legislative intent manifest in the statutory text as well as the accompanying legislative history, which contrary to the dissent's assertion is a basic and invaluable tool of statutory construction, see Ivey, 410 So.2d at 497, we view the approach adopted by the Fifth District Court of Appeal as the most viable method of effectuating the entirety of section 255.05, while preserving principles of fairness and equity. In accordance with our adoption of the approach formulated in Florida Crushed Stone as described herein, as well as the text of section 255.05(4), the payment provisions of bonds posted pursuant to the provisions of section 255.05(1) shall, "regardless of form, be construed and deemed statutory bond provisions, subject to all requirements of subsection (2)." § 255.05(4), Fla. Stat. (1995). However, a company issuing a bond which fails to incorporate all statutorily required information from subsection (6) may be estopped from asserting the claimant's noncompliance with the notice provisions of subsection (2) if the claimant's noncompliance has resulted from the failure of the bond to contain the information required by the statute. See Florida Crushed Stone, 815 So.2d at 716.
We further conclude that once the claimant has made a prima facie showing that the bond is facially deficient under subsection (6) and establishes by a preponderance of the evidence that the claimant did not have actual notice of the provision, the surety is estopped from attempting to enforce the limitations of section 255.05(2), *370 which were not referenced on the face of the bond as statutorily required. The approach adopted today gives all possible effect and consequences to both subsection (4) and subsection (6) as may be available within the judicial system, and applies a field of operation to all provisions in a situation in which both parties clearly failed to comply with statutory requirements while justifiably relying upon portions of the statute.[8]
The dissent would relegate section 255.05(6) into nonexistence. Under this approach, the statutory requirement to provide specific notification of substantive material information is rendered meaningless. The dissent attempts to ascribe a label of relative "importance," without any recognized authority, to the statutory requirements and through this "importance" analysis simply eliminate a clear statutory provision. This new and unique approach follows neither the analysis of the Fifth District Court of Appeal nor that of the Second District Court of Appeal and is contrary to the well-established body of law that we are required to read and apply all provisions of a statute to be consistent with one another and that we give meaning and effect to the entirety of a statute, not simply erase a statutory provision through an analysis of a judicial doctrine of relative "importance" as the dissent urges in this conflict. We attach no higher "importance" to any singular provision but simply attempt to afford each provision impact, consequences and a field of operation, nor do we comprehend that affording each statutory provision some effectiveness is a "reward" to any party. To the contrary, the dissent would have the surety reap the benefit of or, in its terms, be "rewarded" for its noncompliance with a specific statutory requirement.
Further, we do not find the decisions upon which the dissent relies to assert that an absence of particular penalties within the statutory scheme justifies its position to render a significant statutory provision totally without meaning. Whether a statutory violation creates a separate cause of action, the principle addressed by most of those decisions is not at all responsive to affording a statutory provision some field of operation in its entirety depending on the particular facts as we have addressed today.

Conclusion
In accordance with the foregoing, we conclude that the notice and time limitation provisions of section 255.05(2) may be enforceable, even where the statutory payment bond at issue does not contain reference to those notice and time limitation provisions in accordance with section 255.05(6). Once the claimant upon the bond makes a prima facie showing that the bond is facially deficient within the context of the statute and establishes by a preponderance of the evidence that the claimant did not have actual notice of the provision, the surety is estopped from attempting to enforce those provisions. We therefore quash the decision below to the extent it is inconsistent with this opinion, and approve the approach of the Fifth District in Florida Crushed Stone Co. v. American Home Assurance Co., 815 So.2d 715 (Fla. 5th DCA 2002), as more fully developed herein.
*371 This cause is remanded for a determination of whether Plaza Materials can satisfy the requirements outlined herein to cause the estoppel to arise, adjudication of the respective motions seeking reimbursement for prevailing party costs and attorney's fees in connection with representation before this Court and all others, and final resolution of this case in accordance with this decision.
It is so ordered.
PARIENTE, C.J., and ANSTEAD, LEWIS, and QUINCE, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
CANTERO, J., concurs in part and dissents in part with an opinion, in which BELL, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I join in Justice Cantero's concurring and dissenting opinion except for that part of his opinion discussing the use of legislative staff analysis in statutory construction. I do not join in Justice Cantero's view on that subject.
CANTERO, J., concurring in part and dissenting in part.
I agree with the majority to quash the district court's decision. I disagree, however, that section 255.05, Florida Statutes (1995), contains conflicting provisions and that, to avoid a windfall to either side in this case, we must judicially impose a compromise view disconnected from any statutory language. The problem with the statute is not that two provisions conflict; it is that neither party complied with it. In that event, the statute itself determines who prevails: the deadlines imposed on claimants in subsection (2) apply regardless of the form of the bondthat is, regardless of whether the bond warns of those deadlines. The majority holds, however, that if the bond fails to warn of the deadlines, and if the claimant did not have actual notice of them, the deadlines no longer apply. Such an interpretation emasculates the unambiguous language in subsection (4) (providing that the deadlines apply anyway), thwarts the Legislature's intent, and rewards ignorance.
I begin by analyzing the relevant sections of the statute. Next, I explain why the statutory intent is to apply the deadlines even if the bond fails to refer to them. I then argue that the majority's approach conflicts with the statute and creates more problems than it solves. Finally, I demonstrate that, contrary to the majority's assumption, its decision eviscerates not only the deadlines, but also the one-year statute of limitations for bringing claims on the bond.

I. THE STATUTORY LANGUAGE
In determining whether the statutory deadlines can be enforced even though a bond does not refer to them, we must examine several provisions of section 255.05. I briefly describe each.
Subsection (1) requires that persons contracting with any Florida public entity for construction or repairs must provide a payment and performance bond insuring completion of the work and payment of subcontractors. § 255.05(1), Fla. Stat. (1995). It also prescribes information that "must be stated" in the bond. For example, the "bond must state the name and principal business address of both the principal and the surety and must contain a description of the project sufficient to identify it." Id. Further, the bond "shall be conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make *372 payments to all persons defined in s. 713.01." Id.
Subsection (2) establishes certain deadlines claimants must meet to receive payment under the bond. § 255.05(2), Fla. Stat. (1995). For example, within forty-five days of beginning work, a claimant must notify the contractor that the claimant will look to the bond for protection. Then, within ninety days of completing the work, a claimant who has not been paid must notify the contractor and the surety of both the completion of the work and the nonpayment. Subsection (2) warns that "[n]o action ... may be instituted against the contractor or the surety unless both notices have been given." Id. Finally, subsection (2) establishes a one-year statute of limitations.
Subsection (3) contains a form for a public construction bond, but specifies that the "bond required in subsection (1) may be in substantially the following form." § 255.05(3), Fla. Stat. (1995). Notably, the model bond does not refer to the deadlines in subsection (2).
The next relevant provision is subsection (4). That subsection states that "[t]he payment provisions of all bonds furnished for public work contracts described in subsection (1) shall, regardless of form, be construed and deemed statutory bond provisions, subject to all requirements of subsection (2)." § 255.05(4), Fla. Stat. (1995) (emphasis added). I emphasize the "regardless of form" language because I believe it is ultimately dispositive.
Finally, subsection (6) imposes notice requirements on the issuer of the bond. § 255.05(6), Fla. Stat. (1995). It provides that "[a]ll bonds executed pursuant to this section shall make reference to the notice and time limitation provisions of this section." Id.
Thus, the statute requires public works contractors to furnish a bond, it provides a model bond contractors can use, it requires claimants to meet certain deadlines, it requires the bond to notify claimants of these deadlines, and it provides that the deadlines apply regardless of the form of the bond.

II. RECONCILING THE PROVISIONS
According to the majority, see majority op. at 365, a conflict exists between subsection (6) (requiring the bond to warn of the statutory deadlines) and subsection (4) (providing that the deadlines apply regardless of the form of the bond). I disagree. Rather, subsection (4) actually resolves a potential conflict. That conflict is between subsection (2), which establishes the statutory deadlines, and subsection (6), which requires the bond to warn about those deadlines. What happens when, as occurred here, the bond fails to warn of the deadlines and the claimant fails to meet them? Subsection (4) answers that question: the statutory deadlines apply regardless of the form of the bond.
When confronted with an issue of statutory construction, as in this case, we are guided by legislative intent. See State v. Rife, 789 So.2d 288, 292 (Fla.2001). This intent "must be determined primarily from the language of the statute." Overstreet v. State, 629 So.2d 125, 126 (Fla.1993).
The legislative intent being plainly expressed, so that the act read by itself or in connection with other statutes pertaining to the same subject is clear, certain and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms.... Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself *373 authorized to depart from the plain meaning of the language which is free from ambiguity.
Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla.1992) (quoting Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, 694-95 (1918) (quoting 2 J.G. Sutherland, Statutes and Statutory Construction § 366 (1904))). Thus, "[i]f the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended." Tropical Coach Line, Inc. v. Carter, 121 So.2d 779, 782 (Fla.1960). In this case, the statutory language itself answers the question.
As the Fifth District Court of Appeal has recognized, subsection (4), which requires compliance with the deadlines regardless of the form of the bond, constitutes a clear and unambiguous abrogation of common law payment bonds on public works projects. See Fla. Crushed Stone Co. v. Am. Home Assurance Co., 815 So.2d 715, 716 (Fla. 5th DCA 2002). Subsection (4) makes the "payment provisions of all [public works] bonds" into statutory bond provisions and therefore subject to subsection (2). There are no exceptions. "Regardless of" means "without taking into account." Merriam Webster's Collegiate Dictionary 981(10th ed.1993). Thus, the phrase emphasizes the absolute and all-inclusive reach of the subsection.
Viewing subsections (4) and (6) in pari materia with the rest of the statute leads to the same conclusion. See Forsythe, 604 So.2d at 455 ("It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole."). Subsection (2), which establishes the forty-five-day, ninety-day, and one-year deadlines, warns expressly that (1) "[n]o action" may be brought "unless both notices have been given" and that (2) "[n]o action" may be brought on the payment bond more than one year after performance of the contract. § 255.05(2), Fla. Stat. (1995). That subsection contains no exceptions, either. If the notices are not timely provided, relief is barred. A claim is also barred if not brought within the one-year statute of limitations.
Under subsections (4) and (2), then, the statute clearly provides that all bond payment provisions are statutory and all are subject to these deadlines. In this case, Plaza Materials failed to comply with the statute's notice requirements and did not file its claim within the one-year period. See Am. Home Assurance Co. v. Plaza Materials Corp., 826 So.2d 358, 359 (Fla. 2d DCA 2002). Accordingly, under these two provisions alone, its action is barred.
An examination of the other relevant subsections of section 255.05 reinforces this conclusion. Subsection (6) requires that all bonds refer to section 255.05 and to the deadlines in the statute. Subsections (1) and (6) have two things in common. First, they both specify required information for the contents of the bond. Second, neither subsectionnor any other part of the statuteprescribes a consequence for failing to comply with these requirements. In contrast, subsection (4) provides that all bonds "regardless of form" are subject to the deadlines of subsection (2). That subsection, in turn, provides that a claim is barred if notice is not given or if brought after the one-year statute of limitations has run. § 255.05(2), Fla. Stat. (1995). The lack of any sanction for noncompliance in subsections (1) and (6), combined with the unequivocal "regardless of form" language of subsection (4) referring to subsection (2) and the equally unequivocal language of subsection (2), demonstrates that the Legislature intended to *374 enforce the statutory deadlines regardless of whether the bond referred to them.
We have held that the absence of a sanction for noncompliance with a statutory provision evidences a legislative choice about the primacy of that provision vis-a-vis other, conflicting provisions. See Dept of Bus. Regulation v. Hyman, 417 So.2d 671, 673 (Fla.1982) ("Although section 120.59(1) says that final orders shall be rendered within 90 days, it does not specify any sanction for violation of the time requirement. Other parts of chapter 120, however, do provide sanctions or other consequences where there is a failure by either an agency or an affected party to act within the prescribed time limits."). Further, not every statutory violation carries a civil remedy. See, e.g., Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 852 (Fla.2003) (noting that "[t]he [Health Maintenance Organization] Act does not specifically provide a private right of action for damages based upon an alleged violation of its requirements"); Mantooth v. Richards, 557 So.2d 646, 646 (Fla. 4th DCA 1990) (holding that a violation of a criminal statute did not afford a civil remedy); see also Gunn v. Robles, 100 Fla. 816, 130 So. 463, 463 (1930) ("Where a particular remedy is conferred by statute, it can be invoked only to the extent and in the manner prescribed."); Sylvester v. City of Delray Beach, 584 So.2d 214, 215 (Fla. 4th DCA 1991) (holding that the exclusive remedy for violation of a statute was injunctive relief); City of Miami v. Cosgrove, 516 So.2d 1125, 1127 (Fla. 3d DCA 1987) (holding that a statute granting a right to injunctive relief did not thereby grant a right to collect damages); cf. 48A Fla. Jur.2d Statutes § 227 (2000) ("In general, a statute that does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability.").
Had the Legislature intended to punish the omission of the information subsection (6) requires, it could have so provided. I find it significant that the Legislature added subsections (4) and (6) at the same time, in 1980. See Ch. 80-32, § 1 Laws of Fla. Had the Legislature wanted to enforce subsection (6), it could have excepted from the deadlines in subsection (2) any bond not complying with subsection (6). It did not do so, and in fact added subsection (4) as well. Thus, the Legislature emphasized that the failure to comply with subsection (6) would not affect a claimant's obligation to comply with the deadlines in subsection (2).
I also find it significant that when the Legislature amended the statute to add subsections (4) and (6), it did not also amend subsection (3). See Ch. 80-32, § 1, Laws of Fla. Subsection (3) provides a form for a public construction bond, but this approved bond does not refer to the statutory deadlines. § 255.05(3), Fla. Stat. (1995). The subsection specifies that the "bond required in subsection (1) may be in substantially the following form." Id. Thus, the Legislature obviously approves the use of its model bond. If it had deemed essential the references to the statutory deadlines, it would have amended its model form when it added subsection (6). It also would have tempered the "regardless of form" language in subsection (4). The fact that it did not supports the conclusion that subsection (4) was designed to enforce the statutory deadlines even if the bond failed to refer to them.
Under the majority's decision, however, even a bond that copies verbatim the statute's model form could lose the statutory protections. In this case, American Home issued the bond using a standard Department of Transportation bond that closely parallels the model bond. Like the model *375 bond, American Home's refers to section 255.05 generally (thus placing claimants on notice of the statute), but does not refer specifically to the deadlines.
Further support for my reading of the statute is the fact that subsection (6) merely requires a redundant actthat is, notice of what the statute already says and what claimants are legally presumed to know. In the area of bonds in particular, courts have held that "the provisions of [section 255.05] become a part of the bond or the bond should be construed in light of the statute." Fuller Indus., Inc. v. R. Terry Blazier & Son, Inc., 188 So.2d 2, 3 (Fla. 2d DCA 1966). More generally, the public is on constructive notice of statutory requirements. See, e.g., Ellis v. State, 762 So.2d 912, 912 (Fla.2000) (recognizing that publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the consequences of their actions); In re Will of Martell, 457 So.2d 1064, 1068 (Fla. 2d DCA 1984) (recognizing that each person is presumed to know the law); Guemes v. Biscayne Auto Rentals, Inc., 414 So.2d 216, 218 n. 4 (Fla. 3d DCA 1982) (same); Hart v. Hart, 377 So.2d 51, 52 (Fla. 2d DCA 1979) ("All citizens are presumed to know the law."); cf. Health Care & Ret. Corp. of Am. v. Dep't of Health & Rehab. Servs., 463 So.2d 1175, 1177 (Fla. 1st DCA 1984) (noting that an applicant for a certificate of need is presumed to know the applicable law). Many cases have recognized the maxim, as old as the law itself, that ignorance of the law is no excuse. See, e.g., Fla. Bar v. Dubow, 636 So.2d 1287, 1288 (Fla.1994); D.F. v. State, 682 So.2d 149, 152 (Fla. 4th DCA 1996); Reason v. Motorola, Inc., 432 So.2d 644, 645 (Fla. 1st DCA 1983). Thus, Plaza Materials is presumed to know the operative law affecting its rights and obligations. I note that the bond in this case expressly cited section 255.05. Thus, Plaza Materials was warned to read it.
Further underscoring this conclusion is the fact that a contractor is not required to provide claimants a copy of the bond. § 255.05(1), Fla. Stat. (1995). Rather, the claimant must request a copy from the governmental entity in charge of the public works project. See id. Unless the claimant specifically requests a copy of the bond when it begins work, it will not even see the references to the statutory deadlines until it files a claim.
For these reasons, I conclude that although the Legislature apparently found it important to require that bonds refer to the deadlines of subsection (2), the language of subsection (4)providing that, regardless of form, all bonds remain subject to the requirements of subsection (2)demonstrates that it did not grant the requirement of notice of the deadlines coequal status with the deadlines themselves.
So far, my discussion has focused on the statute's plain language. But the majority also examines the legislative staff analyses in an attempt to divine the "intent" behind the Legislature's silence on the enforcement of subsection (6). See majority op. at 368 (citing, for example, staff analyses and concluding that "[b]efore the bill was passed, the legislative intent shifted"). In my view, this kind of analysis is "neither compatible with our judicial responsibility of assuring reasoned, consistent, and effective application of the statutes . . ., nor conducive to a genuine effectuation of [legislative] intent." Blanchard v. Bergeron, 489 U.S. 87, 99, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (Scalia, J., concurring in part and concurring in the judgment).
This Court has stated that legislative staff analyses are not determinative of legislative intent, but are only "one touchstone of the collective legislative will." White v. State, 714 So.2d 440, 443 n. 5 (Fla.1998) (quoting Sun Bank/South Florida, *376 N.A. v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA 1994)). However, where the language is clear, courts need no other aids for determining legislative intent. See Tropical Coach Line, Inc., 121 So.2d at 782. Even if the language were not clear, legislative staff analyses add nothing to an investigation of legislative intent. Staff analyses are not written by legislators but, as the name implies, by staffthat is unelected employees. The analyses thus "provide scant evidence of even a probable or constructive legislative intent, because they are crafted by staff ... and are subject to packing via influence of interest groups and other legislative insiders." Foreman v. United States, 26 Cl.Ct. 553, 562 (Cl.Ct.1992), aff'd, 60 F.3d 1559 (Fed. Cir.1995). Another problem with relying on a staff analysis is that no evidence exists that any of the legislators who voted for the proposed bill even read the analysis, much less agreed with it. See Foreman, 26 Cl.Ct. at 562. Moreover, the staff analyses the majority cites came from only one house of the legislature, and again no evidence exists that the other house adopted it, agreed with it, or even read it. The fact is that even if all the legislators read the staff analysis of a bill, they could disagree with it and still vote in favor of the bill itself. See Bank One Chicago, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 280, 116 S.Ct. 637, 133 L.Ed.2d 635 (1996) (Scalia, J., concurring in part and concurring in the judgment) ("Moreover, even if subjective intent rather than textually expressed intent were the touchstone, it is a fiction of Jack-and-the-Beanstalk proportions to assume that more than a handful of those Senators and Members of the House who voted for the final version of the [legislation] ... were, when they took those actions, aware of the drafting evolution [of the bill] ...; and if they were, that their actions in voting for or signing the final bill show that they had the same `intent' which that evolution suggests was in the minds of the drafters."). The only text with which a legislator must agree is the text of the bill itself. See Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 390-91, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (Scalia, J., concurring in the judgment) ("The only reliable indication of that [legislative] intentthe only thing we know for sure can be attributed to all of themis the words of the bill that they voted to make law."); Deason v. State, 688 So.2d 988, 990 (Fla. 1st DCA 1997) (Allen, J., dissenting) (disagreeing with "majority's reliance upon tidbits of legislative history to discern `legislative intent'" and stating that the "law means what its text most appropriately conveys"), approved sub nom. Deason v. Dep't of Corrections, 705 So.2d 1374 (Fla.1998).[9]
Even if staff analyses were potentially helpful in the abstract, in this case they provide no useful information. The staff analyses indicate that (1) the bond form in the statute would remain permissive; (2) regardless of form, the bonds shall be construed as statutory; and (3) the bond must refer to the statute's notice and time limitations. See majority op. at 368. All of this is contained in the statute itself, and none of it substantiates the majority's conclusion that it shows "clear[ly] that the Legislature did not intend for either subsection (4) or (6) to have a completely preclusive effect." Majority op. at 368. *377 The purported lamp of legislative history sheds no light on this issue.

III. THE MAJORITY'S ACTUAL NOTICE ANALYSIS
I also disagree with the majority's adoption of an actual notice requirement to resolve this case. The majority essentially adopts the resolution of the Fifth District Court of Appeal in Florida Crushed Stone, 815 So.2d at 716. That court held that "a bonding company which has issued a bond which fails to incorporate all statutorily required information may be estopped from asserting the claimant's non-compliance with the provisions of subsection (2) if such non-compliance has resulted from the failure of the bond to contain the information required by the statute." Id. The majority limits the test to instances in which the bond fails to refer to the deadlines in subsection (2). See majority op. at 368. Under the majority's holding, if the bond does not refer to the statutory deadlines and the claimant can demonstrate it did not have actual notice of those deadlines, the surety is estopped from enforcing them. In other words, a claimant who is ignorant of the law can estop a surety from enforcing it, while a claimant who is informed about the law cannot.
The first problem with this resolution is that it is blatantly extra-statutory. Although neither party in this case complied with the statute, nothing in the statute even hints at the resolution reached by the majority. To the contrary, the "regardless of form" language in subsection (4) dictates the opposite. Had the Legislature intended use of such a prejudice analysis, it certainly could have included oneas it did when it added subsection (8) in 1998. See Ch. 98-135, § 1, Laws of Fla. Under that provision, a contractor furnishing a payment bond may serve a written demand on a claimant not in privity with the contractor for a sworn accounting of the claimant's labor or services. § 255.05(8), Fla. Stat. (Supp.1998). A claimant's failure to respond to a contractor's demand for an accounting within thirty days, as well as a fraudulent response, forfeits the claimant's right under the bond. However, the negligent inclusion or omission of information will forfeit the bond only to the extent that the contractor can demonstrate prejudice. This provision remains in the statute. It illustrates even more clearly that when the Legislature stated in subsection (4) that all public work bonds regardless of form are subject to the time and notice limitations of subsection (2), it meant what it said.
The next problem with the majority's approach is an obvious one: it rewards ignorance. Potential claimants that keep informed of statutory requirements must comply with the deadlines, while those that blind themselves to the law can avoid them. In this case, for example, the bond referred to the statute itself. The majority's approach, however, rewards claimants who, despite notice of the statute, refuse to read it. Such a result is contrary to the principles outlined above that every person is presumed to know the law and that ignorance of the law is no excuse. Such an approach also will substantially increase the costs of litigating these claims as courts hold mini-trials on the issues of what claimants knew and when they knew it. Because ignorance is nearly always an issue of fact, much time, money, and resources will have to be spent resolving this issue. That is exactly what subsection (4) intended to avoid.
I also find it problematic that the exception allows a claimant establishing lack of notice to assert a claim against the surety when the surety did not even draft the bond. As the First District Court of Appeal has stated, "[i]f any ambiguity arguably *378 existed in the bond, it could hardly be construed against the surety which did not prepare the bond.... The bond's drafter, the State of Florida and the nominal plaintiff, is the only party that is subject to the rule of strict construction not the surety." State Dep't of Transp. v. Houdaille Indus., Inc., 372 So.2d 1177, 1178 (Fla. 1st DCA 1979) (footnote omitted). In other words, the surety should not be held responsible for the agency's omission.

IV. THE STATUTE OF LIMITATIONS
Finally, I address the majority's abrogation of the one-year statute of limitations in cases where the bond fails to warn of the statutory deadlines.[10] The majority's decision creates a basis for completely evading the statute of limitations on claims against payment bonds.
In the past, claimants frequently argued they were not subject to the time limitations of subsection (2) because theirs was a common law, not a statutory payment bond. See 7 Fla. Jur.2d Bonds §§ 8-9 (2004). The bond, so the argument went, provided coverage exceeding the minimum statutory requirements and thus was subject to the longer statute of limitations for an action on a contract founded on a written instrument. See Florida Keys Cmty. Coll. v. Ins. Co. of N. Am., 456 So.2d 1250, 1251 (Fla. 3d DCA 1984); 7 Fla. Jur.2d Bonds § 9 (2004); see also, § 95.11(2)(b), Fla. Stat. (2004) (providing a five-year statute of limitation of actions on written contracts).[11] Plaza Materials has made this argument throughout this litigation. The majority correctly rejects that argument and holds, in accordance with the express language of subsection (4), that the bond is indeed a statutory payment bond. See majority op. at 368. Section 255.05(2), Florida Statutes (1995), however, provides that "[n]o action shall be instituted against the contractor or the surety on the payment bond or the payment provisions of a combined payment and performance bond after 1 year from the performance of the labor or completion of delivery of the materials or supplies." This one-year statute of limitations remains in the current statute. See § 255.05(2)(b)2., Fla. Stat. (2004); see also ch. 63-437, § 1, Laws of Fla. (amending statute to add one-year statute of limitations). Thus, because Plaza Materials filed its action beyond the one-year statute of limitations, its claim should be barred. See § 95.011, Fla. Stat. (2004) ("A civil action or proceeding ... shall be barred unless begun within the time prescribed in this chapter or, if a different time is prescribed elsewhere in these statutes, within the time prescribed elsewhere."). The majority's decision to remand, however, entitles Plaza Materials to a hearing on its barred claim. If Plaza Materials proves that it failed to meet the statutory deadlines because the bond did not refer to them and it did not have actual noticethat is, that it was ignorant of the lawit will be permitted to escape the one-year statute of limitations. The majority *379 thus holds that if a claimant can establish that it was otherwise ignorant of the deadlines, the surety will be estopped from enforcing all statutory deadlines, including the statute of limitations. The decision effectively abrogates the one-year statute of limitations for payment bonds.

CONCLUSION
For these reasons, I agree that the bond at issue is a statutory bond. I dissent, however, from absolving a claimant from the deadlines of subsection (2) simply because the bond failed to refer to them. I would quash the district court's decision and direct that judgment be entered in favor of American Home.
BELL, J., concurs.
NOTES
[1] We note at the outset that our decision today is directed only to resolution of the certified question before us. Thus, we limit the scope of our analysis to bonds posted pursuant to section 255.05 of the Florida Statutes (1995), and do not address whether application of section 337.18(1) of the Florida Statutes (1995) would otherwise impact this case because such statutory provision has not been called into issue by any party. This additional conflict in connection with public projects appears to need legislative attention along with the conflict we address today.
[2] The pertinent portion of section 255.05 specifically provides:

Any person entering into a formal contract with the state or any county, city, or political subdivision thereof, or other public authority, for the construction of a public building, for the prosecution and completion of a public work, or for repairs upon a public building or public work shall be required, before commencing the work, to execute, deliver to the public owner, and record in the public records of the county where the improvement is located, a payment and performance bond with a surety insurer authorized to do business in this state as surety. The bond must state the name and principal business address of both the principal and the surety and must contain a description of the project sufficient to identify it. Such bond shall be conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make payments to all persons defined in s. 713.01 whose claims derive directly or indirectly from the prosecution of the work provided for in the contract.
§ 255.05(1)(a), Fla. Stat. (1995).
[3] The relevant text of section 255.05(2) provides:

A claimant, except a laborer, who is not in privity with the contractor shall, within 45 days after beginning to furnish labor, materials, or supplies for the prosecution of the work, furnish the contractor with a notice that he intends to look to the bond for protection. A claimant who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 90 days after performance of the labor or after complete delivery of the materials or supplies or, with respect to rental equipment, within 90 days after the date that the rental equipment was last on the job site available for use, deliver to the contractor and to the surety written notice of the performance of the labor or delivery of the materials or supplies and of the nonpayment. No action for the labor, materials, or supplies may be instituted against the contractor or the surety unless both notices have been given. No action shall be instituted against the contractor or the surety on the payment bond or the payment provisions of a combined payment and performance bond after 1 year from the performance of the labor or completion of delivery of the materials or supplies.
§ 255.05(2), Fla. Stat. (1995).
[4] The full text of subsection (6) provides: "All bonds executed pursuant to this section shall make reference to this section by number and shall contain reference to the notice and time limitation provisions of this section." § 255.05(6), Fla. Stat. (1995).
[5] Prior to the adoption of these subsections in 1980, district courts would determine whether the bond was a statutory bond or common law bond by examining the document for reference to the statutory provision and applicable notice obligation and time limitation or the provision of coverage in excess of statutory limits. Compare United Bonding Ins. Co. v. City of Holly Hill, 249 So.2d 720, 724 (Fla. 1st DCA 1971) (deeming bond a common law bond because the document failed to reference section 255.05 and applicable time limitation and provided coverage in excess of that required by the statute); S.W. Fla. Water Mgmt. Dist. ex rel. Thermal Acoustic Corp. v. Miller Constr. Co., 355 So.2d 1258, 1259 (Fla. 2d DCA 1978) (deeming bond a common law bond because it provided coverage in excess of that required by law) with State Dep't of Transp. ex rel. Consol. Pipe & Supply Co. v. Houdaille Indus., Inc., 372 So.2d 1177, 1178 (Fla. 1st DCA 1979) (determining that the failure to reference the notice requirement and time limitation of section 255.05 did not recast a statutory bond as a common law bond where the document specifically referenced the statutory provision and did not expand the scope of coverage beyond the statutory requirement).
[6] The Second District has repeated its dedication to the conclusions within the decision below in its subsequent American Home Assurance Co. v. APAC-Florida, Inc., 834 So.2d 369 (Fla. 2d DCA 2003), decision.
[7] Further, the dissent's reliance on various concurring opinions by United States Supreme Court Justice Scalia is most questionable and to no substantive avail since such opinions are not binding precedent either. See generally Mitchum v. State, 251 So.2d 298, 300 (Fla. 1st DCA 1971) (noting that a concurring opinion in a United States Supreme Court case is not binding on a state court as precedent).
[8] We note that the institutional capacity of this Court limits our power to address the inescapable internal conflict within section 255.05 in operation to an attempt to harmonize subsections (4) and (6). The parties are urged to take the issues presented in this action to the Legislature for possible amendment of the statutory provisions at issue to effectuate legislative priorities and policy and eliminate the conflicts which may arise among the provisions in actual operation.
[9] The majority insists that this Court has relied on staff analyses in determining legislative intent. I concede as much. But none of these cases explain how a document written by a legislative staff member can help to determine the intent of a legislative body whose members need not even read the document, much less agree with its contents, before voting in favor of the bill at issue. That we have engaged in a questionable practice in the past is not, to me, adequate justification, standing alone, for continuing to do so.
[10] In this case, Plaza Materials admittedly did not file its claim within the one-year period, and the question of whether the bond's failure to refer to the subsection (2) deadlines eliminated the limitations period was argued both below and in this appeal.
[11] In 1988 the Legislature added paragraph (e) to subsection 95.11(5) to make all claims against payment bonds for both private and public works subject to a one-year statute of limitation. Ch. 88-397, § 1, Laws of Fla. Then in 2001 the Legislature amended section 95.11(2)(b), which provides a five-year statute of limitation for legal and equitable claims on a written instrument, to specify that claims against payment bonds "shall be governed by the applicable provisions of ss. 255.05(2)(a)2. and 713.23(1)(e)." Ch.2001-211, § 2, Laws of Fla.