979 So.2d 304 (2008)
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Petitioner,
v.
Jesse C. PELHAM, Respondent.
No. 5D07-2737.
District Court of Appeal of Florida, Fifth District.
March 14, 2008.
*305 Judson M. Chapman and Heather Rose Cramer, Lake Worth, for Petitioner.
Eric A. Latinsky, Daytona Beach, for Respondent.
TORPY, J.
After Respondent's driver's license was suspended for refusal to take a breath test, he sought formal review before a Department of Highway Safety and Motor Vehicles (DHSMV) hearing officer. Respondent contended that the suspension should be invalidated because the detention preceding his arrest had been unlawful. The hearing officer refused to consider the lawfulness of Respondent's arrest, concluding that recent amendments to the statutory review procedure precluded him from addressing those issues. Respondent thereafter sought certiorari review in the Circuit Court, which granted his petition and quashed the hearing officer's ruling. Petitioner now seeks review of the Circuit Court's order. We conclude that the lawfulness of Respondent's arrest was appropriately within the hearing officer's scope of review and that the Circuit Court properly quashed the order of the hearing officer. Accordingly, we deny the petition.
A detailed exposition of the facts is unnecessary to the legal issue we confront. Suffice it to say that Respondent was in his car on private property when he was approached by police officers who ordered him to exit. When Respondent refused, police officers forcibly removed him from the car. The officers then became suspicious that Respondent was under the influence of alcohol and requested that he perform field sobriety tests. He refused, and was arrested for DUI. Later, he refused to take a breath test. Although the hearing officer declined to address the lawfulness of the police actions in entering upon private property and then forcibly removing Respondent from his car, the lower court concluded that this action constituted an unlawful seizure of his person. Petitioner does not contend otherwise but instead maintains that the lawfulness of the police action is not legally relevant in an administrative proceeding to suspend a driver's license.[1]
The obligation to submit to testing for alcohol and chemical substance impairment emanates from section 316.1932, Florida Statutes (2007). This statute, sometimes referred to as the Implied Consent Law, provides that any person who accepts the privilege of operating a motor vehicle in this state is deemed to consent to testing to determine the "alcoholic content of his or her blood or breath if the person is lawfully arrested. . . ." § 316.1932(1)(a)1.a., Fla. Stat. (2007) (emphasis added). The statute further states that the test "must be incidental to a lawful arrest and administered at the request of a law enforcement officer. . . ." Id. Thus, a lawful arrest must precede the *306 administration of the breath test. State, Dep't of Highway Safety & Motor Vehicles v. Whitley, 846 So.2d 1163, 1167 (Fla. 5th DCA 2003). It necessarily follows that an individual does not violate the Implied Consent Law when he or she refuses to take a test that is not incidental to a lawful arrest.
Although our analysis might logically end here because this is a case where the refusal followed an unlawful arrest, Petitioner contends that the refusal may nevertheless form the basis for the suspension of Respondent's license because of the 2006 amendments to section 322.2615, Florida Statutes (2007). As a result of these amendments, Petitioner urges that the legislature "negated" lawfulness of the arrest as a precondition to the administrative suspension of one's license. Our resolution of this case thus requires us to consider the effect of section 322.2615, as amended.
Among other things, section 322.2615 authorizes a law enforcement officer on behalf of DHSMV to suspend the driver's license of any person who refuses to submit to a "lawful" breath test. § 322.2615(1)(a) and (1)(b)1.a., Fla. Stat. (2007)[2] (emphasis added). Upon such suspension, the statute entitles the driver to formal review of the validity of the suspension before a DHSMV hearing official. In pertinent part, the formal review portion of the statute provides:
In a formal review hearing . . . the hearing officer shall determine . . . whether sufficient cause exists to sustain, amend or invalidate the suspension. The scope of review shall be limited to the following issues:

. . . .
(b) If the license was suspended for refusal to submit to a breath, blood, or urine test:
1. Whether the law enforcement officer had probable cause to believe that the person whose license was suspended was driving or in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages or chemical or controlled substances.
2. Whether the person whose license was suspended refused to submit to any such test after being requested to do so by a law enforcement officer or correctional officer.
3. Whether the person whose license was suspended was told that if he or she refused to submit to such test his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months.
§ 322.2615(7), Fla. Stat. (2007) (emphasis added).
In the prior version of the statute, the hearing officer's scope of review included the additional issue of "whether the person was placed under lawful arrest for a violation of s. 316.193." § 322.2615(7)(b)2., Fla. Stat. (2005). Because the legislature deleted this statutory language and made other deletions in the amended statute, Petitioner contends that the lawfulness of the arrest is no longer an issue in the suspension process. Respondent counters that the text of the amended statute does not support this construction, especially when considered in pari materia with section 316.1932. Petitioner responds that sections 316.1932 and 322.2615 should be read in isolation because they are intended to address different issues. *307 Section 316.1932, Petitioner contends, is a criminal statute, while section 322.2615 is a statute that authorizes administrative sanctions.[3] Petitioner also relies upon a house staff report which states that the amendment "negate[s] the need" for the DHSMV to show "that a lawful arrest for a violation of s. 316.193, F.S. occurred" in an administrative license suspension proceeding. Fla. H.R. Comm. on Transp., HB 7079 (2006) Staff Analysis 25 (Apr. 26, 2006). We agree with Respondent.
Section 322.2615 does not establish any obligation on the part of a driver to take a test upon the request of law enforcement; it only establishes consequences for refusal. Section 316.1932 is what creates and defines the scope of the obligation, and its mandate is certain: the test must be incident to a lawful arrest. These statutes cannot be construed in isolation, therefore, as Petitioner urges, because they are interdependent. Instead, we must consider them in pari materia. See Ferguson v. State, 377 So.2d 709, 710 (Fla.1979) (basic rule of statutory construction that statutes which relate to the same or to a closely related subject or object are regarded as in pari materia and should be construed together and compared with each other). When we do, the conclusion is inescapable that a suspension may not be predicated on refusal to take a test that is the product of a unlawful arrest.
This conclusion is supported by the fact that section 322.2615 only permits suspension "pursuant to" a "lawful" test, based on a statutory form of notice, which must state that the refusal involves a "lawful" test. § 322.2615(1)(a) and (1)(b)1.a., Fla. Stat. (2007). There is no definition of what constitutes a "lawful" test, so it is necessary to examine the entire statutory scheme for breath testing, and in particular section 316.1932, to determine what is lawful. Under this statutory scheme, clearly, a "lawful" test is, at a minimum, one that drivers are required to take pursuant to section 316.1932, which must be incident to a lawful arrest.
We have not overlooked the legislative staff report but are reluctant to accept this staff analysis as evidence of what the legislature intended by making deletions in the statute. The staff analysis itself contains a caveat that it should not be interpreted as an expression of the "intent or official position of the bill sponsor or House of Representatives." Fla. H.R. Comm. on Transp., HB 7079 (2006) Staff Analysis 25 (Apr. 26, 2006). This is for good reason. The analysis is not written by legislators, nor is there any evidence that legislators voting on the bill read the analysis or agreed with its conclusions. See Am. Home Assur. Co. v. Plaza Materials Corp., 908 So.2d 360, 375-76 (Fla.2005) (Cantero, J., concurring in part and dissenting in part) (discussing why staff analysis is not reliable evidence of legislative intent). Even were we to accept the analysis as evidence of legislative intent, however, it is not our function to rewrite the statutory scheme to do what the legislature failed to accomplish expressly.
Nor have we overlooked the language of subsection 322.2615(7), which purports to "limit" the scope of review to three issues. The first issue, probable cause, is a concept that is often inextricably intertwined with the lawfulness of the detention as it is in this case. Indialantic Police Dep't v. Zimmerman, 677 So.2d 1307, 1309 (Fla. 5th DCA 1996). The second issue directs the hearing officer to *308 address whether the driver "refused to submit to any such test." (Emphasis added). § 322.2615(7)(b)2., Fla. Stat. We construe "any such test" to refer to the "lawful" test that the suspension must be "pursuant to." The final issue, the provision of notice, relates to the form of notice mandated by the same statute, which too refers to a "lawful" test. Therefore, we do not construe this so-called limitation on the hearing officer's scope of review to nullify the statute's directive that the hearing officer "determine . . . whether sufficient cause exists to sustain, amend, or invalidate the suspension." § 322.2615(7), Fla. Stat. (2007). Under the statutory scheme, the lawfulness of the suspension is central to any determination that there is "sufficient cause" to "sustain" it.
We remain mindful of our obligation to effectuate legislative intent when we are given clear indication of what is intended. If the legislature intends to authorize DHSMV to suspend a driver's license for refusal to take a test, without regard to the validity of the police action preceding the request, then it should say so expressly.[4]
Because we deem this to be an issue of great public importance, we certify the following questions to our high court:
CAN THE DHSMV SUSPEND A DRIVER'S LICENSE FOR REFUSAL TO SUBMIT TO A BREATH TEST, IF THE REFUSAL IS NOT INCIDENT TO A LAWFUL ARREST? IF NOT, IS A DHSMV HEARING OFFICER REQUIRED TO ADDRESS THE LAWFULNESS OF THE ARREST AS PART OF THE REVIEW PROCESS?
PETITION DENIED; QUESTIONS CERTIFIED.
PALMER, C.J., and PLEUS, J., concur.
NOTES
[1] Petitioner does argue alternatively that we should at least grant the petition to require the remand of the lawfulness issue to the hearing officer. Because Petitioner did not timely assert this argument in the lower court, we conclude that it was not preserved.
[2] The statute provides that the suspension "shall be pursuant to, and the notice of suspension shall inform the driver . . . [that] . . . [t]he driver refused to submit to a lawful . . . test. . . ."
[3] Though not material to our analysis, Petitioner does not explain its characterization of section 322.2615 as a criminal statute.
[4] In light of our holding, we find it unnecessary to consider Respondent's constitutional arguments.